**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **VICTORY RECORDS, INC.,** | ) | |
| | ) | **Civil Action No. 1:15-cv-09180** |
| **Plaintiff,** | ) | |
| | ) | **JURY DEMAND** |
| | ) | |
| **v.** | ) | **JUDGE ZAGEL** |
| | ) | |
| **TOMAS KALNOKY, individually and doing** | ) | |
| **business as STREETLIGHT MANIFESTO,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT TOMAS KALNOKY'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS**

Defendant Tomas Kalnoky hereby submits this Memorandum of Law in Support of his

Rule 12(b)(6) Motion to Dismiss Counts II, III, and IV of the Complaint filed by Victory Records,

Inc. ("Victory") and states as follows:

**Introduction**

On December 4, 2002, Victory entered into an Exclusive Recording Agreement with the

musical group known as Streetlight Manifesto. All of the rights and obligations in the Recording

Agreement pertain to "You" and "Artist," which the Recording Agreement expressly defines as

the group, Streetlight Manifesto. Kalnoky, the lead singer of Streetlight Manifesto, is not a party

to the Recording Agreement outside of his capacity as a member of the group. Victory has no

rights under the Recording Agreement to Kalnoky's services as a solo artist or to his solo

recordings. Nevertheless, Victory has sued Kalnoky, individually, for alleged breach of the

Recording Agreement and for copyright infringement because he self-released certain solo albums

during the term of the Recording Agreement. Respectfully, these claims fail as a matter of law

and should be dismissed because the Recording Agreement does not apply to Kalnoky individually.

### Allegations in the Complaint

Streetlight Manifesto is a rock band. (Dkt. No. 1, Compl. ¶ 2). Tomas Kalnoky is an individual residing in California. (*Id*. ¶ 3). At all relevant times, Kalnoky has performed as a member of Streetlight Manifesto. (*See id*. ¶¶ 3, 10, 11, 18, 68, 83). Kalnoky remains a member of Streetlight Manifesto. (*Id*. ¶¶ 11, 18). Kalnoky also performs sometimes as a solo artist under the name "Toh Kay." (*Id*. ¶¶ 36-39, 41, 43, 45). Victory is a record company headquartered in Chicago. (*Id*. ¶ 1).

Victory and Streetlight Manifesto are parties to an Exclusive Recording Agreement dated December 4, 2002 (the "Recording Agreement"). (Ex. 1, Recording Agreement, Preamble). Victory contends that Kalnoky, individually, is also a party to the Recording Agreement. (*See* Dkt. No. 1, Compl. ¶¶ 56-61). Thus, Victory contends that Kalnoky, individually, agreed to record exclusively for Victory during the term of the Recording Agreement. (*See id*. ¶¶ 57, 60).

Victory contends that Kalnoky breached the Recording Agreement's exclusivity provisions by self-releasing the following solo albums (which embody Kalnoky's individual performances, not those of Streetlight Manifesto) during the term of the Recording Agreement:

- *You By Me, Vol. 1* (November 16, 2010)
- *Streetlight Lullabies* (November 22, 2011)
- *We Will Fall Together* (November 22, 2011)
- *The Hand that Thieves* (April 30, 2013)
- *You By Me, Vol. 2* (August 12, 2014)

(*Id*. ¶¶ 55-61). Victory also contends that one of these albums, *The Hand that Thieves*, violates the "re-recording" provision of the Recording Agreement because it contains compositions also contained on a Streetlight Manifesto album. (*Id*. ¶ 60). Finally, Victory contends that Kalnoky's

self-release of *The Hand that Thieves* and *You By Me, Vol. 2* constitutes copyright infringement because, Victory contends, Kalnoky transferred to Victory the copyrights in his solo recordings created during the term of the Recording Agreement. (*Id*. ¶¶ 62-91).

Under the unambiguous terms of the Recording Agreement, however, Victory has no rights to Kalnoky's services as a solo artist and has no rights in Kalnoky's solo recordings. Victory's claims against Kalnoky in his individual capacity fail as a matter of law.[1]

<u>**Legal Standard**</u>

**I.     Motion to Dismiss Standard.**

A complaint will be dismissed under Rule 12(b)(6) if, taking all facts alleged by the plaintiff to be true, and construing all inferences in plaintiff's favor, the plaintiff has failed to state a claim upon which relief can be granted. *Capelluti v. City of Waukegan*, No. 12 C 8197, 2013 WL 3287138, *2 (N.D. Ill. June 27, 2013) (Zagel, J.) (copy attached as Exhibit 2). A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Id*. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Wilbourn v. Chicago Transit Auth.*, No. 14 CV 6327, 2015 WL 1002879, *1 (N.D. Ill. Mar. 2, 2015) (Zagel, J.) (copy attached as Exhibit 3). Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint. *Kaczmarek v. Microsoft Corp.*, 39 F. Supp. 2d 974, 975 (N.D. Ill. 1999) (Zagel, J.)[2]

---

[1] Kalnoky has moved to dismiss Counts II, III and IV of the Complaint (the breach of contract and copyright infringement claims asserted against him individually). Counts I and V (for breach of contract and setoff, respectively) appear to have been asserted against Streetlight Manifesto, and not Kalnoky individually. However, to the extent these claims are asserted against Kalnoky individually, he seeks to dismiss these claims as well.

[2] When considering a contract appended to pleadings in the context of a motion to dismiss, the Court need not accept the plaintiff's allegations as to the meaning of the document. *AGT Crunch*

## II.      Illinois Law Regarding Contract Interpretation.

Illinois adheres to the "four corners" rule of contract interpretation. *See*, *e.g.*, *Lease Mgmt. Equip. Corp. v. DFO P'ship*, 392 Ill. App. 3d 678, 686 (2009) (holding that "the supreme court's declaration of the 'four corners rule' has never been reversed or modified"; that "the 'four corners rule' remains binding precedent"; and that "trial courts…[a]re confined by that rule").  Under this rule, the trial court interprets a facially unambiguous contract as a matter of law without the use of extrinsic evidence. *Id*. at 685.  Under Illinois law, the court must construe contracts as a whole, giving effect to all terms of the contract, in the light of their ordinary and natural meanings. *AGT Crunch Chicago*, 2008 WL 753951, *3.  Just as the Court will consider all terms included in a contract to be meaningful, it will also find meaning in a party's failure to include a term. *Id*.

## Legal Analysis

## I.      The Recording Agreement is Between Victory and Streetlight Manifesto.

The parties to the Recording Agreement are Victory Records, Inc. and Streetlight Manifesto. (Ex. 1, Recording Agreement, Preamble).  The Preamble defines Victory Records, Inc. as "Company" and Streetlight Manifesto as "You."  (*Id*.)  The Recording Agreement then states that, "You [*i.e.*, Streetlight Manifesto] are sometimes called 'Artist' below; all references in this agreement to you and the Artist and the like shall be understood to refer to you alone."  (*Id*. § 1).  Read in conjunction with the Preamble – which defines "You" as Streetlight Manifesto – the foregoing provision makes clear that all references to "Artist" in the Recording Agreement "shall

---

*Chicago, LLC v. 939 N. Ave. Collection, LLC*, No. 07 C 2986, 2008 WL 753951, *3 (N.D. Ill. Mar. 18, 2008) (Zagel, J.) (copy attached as Exhibit 4).  Rather, the Court can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material. *Id*.  Further, while generally a court must assume that the facts pleaded in the complaint are true, it is a well-settled rule that when a written instrument contradicts allegations in the complaint the instrument trumps the allegations. *Kaczmarek*, 39 F. Supp. 2d at 975.  This exception applies in particular to cases involving contract interpretation. *Id*.

be understood to refer to [Streetlight Manifesto] alone." (*See id*.) The individual members of Streetlight Manifesto are not named parties to the Recording Agreement. (*See id*.) Indeed, as Victory concedes, the individual members signed the Recording Agreement only "on behalf of [Streetlight Manifesto]." (Dkt. No. 1, Compl. ¶ 21).

All of the obligations in the Recording Agreement belong to "Artist" and "You," which, under the terms of the agreement, mean Streetlight Manifesto and <u>not</u> its members in their individual capacity. (*See* Ex. 1, Recording Agreement). Thus, it is <u>Streetlight Manifesto</u> that agreed to render its services exclusively to Victory during the term of the Recording Agreement. (*Id*. § 1) ("[Y]ou [Streetlight Manifesto]…agree to exclusively render such services for Company…during the Term….") It is <u>Streetlight Manifesto</u> that agreed to record and deliver four albums for Victory. (*Id*. § 2(a)) ("During each Contract Period…Artist [Streetlight Manifesto] shall record and deliver to Company a sufficient number of Masters to constitute one (1) new, studio Album"). It is <u>Streetlight Manifesto</u> that transferred to Victory ownership of the copyrights in its master recordings ("Masters") created during the term of the Recording Agreement. (*Id*. § 5(a)) ("All Masters…embodying Artist's [Streetlight Manifesto's] performances that are made during the Term…shall…be the property of Company in perpetuity….") And it is <u>Streetlight Manifesto</u> that agreed to certain "re-recording" restrictions. (*Id*. § 15(a)(vi)) ("Artist [Streetlight Manifesto] shall not perform any Composition recorded hereunder for anyone other than Company…for a period of [] five (5) years after the initial date of release….or [] two (2) years after the expiration…of the Term….)

Kalnoky, in his individual capacity, is not obligated to render his services to Victory as a solo artist. Kalnoky, in his individual capacity, did not transfer to Victory any rights in his solo

recordings. Victory's claims against Kalnoky, in his individual capacity, for breach of the Recording Agreement and copyright infringement fail as a matter of law.[3]

The case of *Williams v. Mercury Recording Corp.* is analogous. 295 F.2d 284 (7th Cir. 1961) (copy attached as Exhibit 5). In that case, Tony Williams and four other individuals entered into an exclusive recording agreement with Mercury Record Corporation ("Mercury") as the musical group "The Platters." *Id.* at 284. When Williams sought to perform as a solo artist for another record company during the term of the contract, Mercury threatened legal action. *Id.* Mercury asserted that its contract bound Williams both individually and as a member of "The Platters" and that, therefore, Williams could not perform individually for any other recording company during the life of the contract. *Id.* Williams sought a declaratory judgment "that the contract in question did not restrict him, individually, from entering into other contracts with third parties respecting his services in his individual capacity as a singer." *Id.* The U.S. District Court for the Northern District of Illinois granted Mr. Williams the declaratory relief sought. *Id.* at 285. It found that "the contract bound him only as to his performance as a member of the singing group, 'The Platters.'" *Id.*

On appeal, the Seventh Circuit affirmed. The Court first noted that the provision at issue gave Mercury exclusive rights to the services of "Artist." *Id.* It then noted that the contract defined "Artist" as "the party or parties hereby contracting with Mercury, whether male or female, singular

---

[3] For its breach of contract claim (Count II), Victory specifically contends that Kalnoky breached the Recording Agreement's exclusivity and "re-recording" provisions, Sections 15(a)(vi) and 5(a), respectively. (Dkt. No. 1, Compl. ¶¶ 55-61). By their terms, however, these provisions pertain only to "Artist" and "You," terms that are defined to mean Streetlight Manifesto. (Ex. 1, Recording Agreement §§ 5(a), 15(a)(vi)). For its copyright infringement claims (Counts III and IV), Victory relies upon Section 5(a), which, gives Victory ownership in Masters "embodying Artist's [*i.e.*, Streetlight Manifesto's] performances." (Dkt. No. 1, Compl. ¶¶ 62-91). Again, by its terms, this provision does not convey to Victory any rights in Masters embodying Kalnoky's performances as a solo artist. (*See* Ex. 1, Recording Agreement § 5(a)).

or plural." *Id*. at 286. Finally, it noted that the contract defined the party contracting with Mercury as "Tony Williams, David Lynch, Zola Taylor, Paul Robi, Herbert Reed, a/k/a 'The Platters.'" *Id*. at 285. In light of the foregoing, the Court concluded as follows:

> The artist parties to the contract are listed at the outset not only by their individual names but also by the group name. The wording of the minimum recording requirements, the provisions for payment of royalties, repeated references throughout the body of the contract to the group name, and the use of the group name in the signature, all support the construction that Mercury was dealing with these singers only as a group singing together, and not as so many individuals singing solo performances.

*Id*. at 286. The Court affirmed the declaratory judgment in favor of Williams.

In this case, just as in *Williams*, the artist party to the Recording Agreement is listed at the outset by its group name. Further, in this case, just as in *Williams*, all of the rights and obligations throughout the Recording Agreement pertain to the group. Finally, in this case, just as in *Williams*, the individual members of the group signed the Recording Agreement only "on behalf of [Streetlight Manifesto]." (Dkt. No. 1, Compl. ¶ 21). Respectfully, *Williams* supports a finding that the Recording Agreement does not bind Kalnoky individually.

**II.      The Limited Circumstances Pursuant to which Victory Could Acquire Rights in Kalnoky Individually Do Not Apply.**

The Recording Agreement sets forth certain limited circumstances pursuant to which Victory may acquire rights in the exclusive services of an individual member of Streetlight Manifesto (*e.g.*, as a solo artist). In particular, the Recording Agreement provides that Victory may acquire such rights <u>only</u> if an individual "refuses, neglects or fails" to perform as a member of Streetlight Manifesto or "leaves the group" <u>and</u> Victory subsequently exercises a written option for the services of that individual:

> If any individual comprising Artist <u>refuses, neglects or fails</u> to perform together with the other individuals comprising Artist in fulfillment of the obligations agreed to be performed  under this agreement <u>or leaves the Group</u>, you shall give Company

7

> prompt written notice…[and] [s]aid individual shall remain bound by this agreement….
>
> ***
>
> Company shall have, and you hereby grant to Company, an irrevocable option for the individual and exclusive services of each of the individual(s) comprising Artist for the purpose of making Records. Said <u>option</u> with respect to such individual(s) may be exercised by Company giving you notice in writing within four (4) months after Company receives the notice provided for in paragraph 21 (a) to the effect that such individual(s) has refused, neglected or failed to perform with the other individuals comprising Artist or that such individual(s) has left the Group or that the Group has disbanded.

(Ex. 1, Recording Agreement, § 21(a), (b) (emphasis added)).

In the instant case, Victory has never acquired any rights in Kalnoky individually (*e.g.*, as a solo artist) because Kalnoky has never "refuse[d], neglect[ed] or fail[ed]" to perform as a member of Streetlight Manifesto, nor has he left the group. To the contrary, at all relevant times, Kalnoky has performed as a member of Streetlight Manifesto and, indeed, he remains a member of Streetlight Manifesto to this day. (*See id.* ¶¶ 3, 10, 11, 18, 68, 83). Even assuming, *arguendo*, that Kalnoky had "refuse[d], neglect[ed] or fail[ed]" to perform as a member of Streetlight Manifesto or had left the group – and he has not – Victory does not allege that it exercised a written option to Kalnoky's individual services. (*See id.*) The exercise of such a written option is the <u>only</u> means contemplated by the Recording Agreement by which Victory could have acquired rights in Kalnoky's services individually. Thus, under the terms of the Recording Agreement – and even accepting as true the allegations contained in Victory's own Complaint – Victory never acquired rights to Kalnoky's services as a solo artist and its claims against him individually fail as a matter of law.[4]

---

[4] As this Court has noted, a party's failure to include a term may be as meaningful in construing a contract as the terms that are actually included. *AGT Crunch Chicago*, 2008 WL 753951, *3 (Zagel, J.) In the instant case, Victory failed to include a simple term stating that the Recording Agreement would apply equally under all circumstances to the individual members as to the group.

8

## Conclusion

For the foregoing reasons, Kalnoky respectfully moves the Court to dismiss Counts II, III, and IV for failure to state a claim under Rule 12(b)(6).

Respectfully submitted,

/s Vangelis Economou
Will Parsons, TN Bar No. 26519 (*pro hac vice* application pending)
SHACKELFORD BOWEN MCKINLEY & NORTON, LLP
47 Music Square East
Nashville, TN 37203
T: (615) 329-4440
wparsons@shackelfordlaw.net

Vangelis Economou, IL Bar No. 6185336
ECONOMOU IP LAW
315 South Plymouth Court, Suite 1110
Chicago, IL 60604
T: (847) 644-3500
Van@EconomouIP.com

*Attorneys for Defendants*

---

Victory's failure to include such a term supports Kalnoky's argument that the Recording Agreement does not apply to him individually.

9

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing has been filed using the Court's Electronic Filing System on this the 9th day of February 2016, and will be served through that System on all attorneys who have entered an appearance in this case, including:

Robert Meloni
Thomas McCaffrey
Meloni & McCaffrey, P.C.
3 Columbus Circle, 15th Floor
New York, New York 10019

Chris Heintskill
Levenfeld & Pearlstein, LLC
2 N. LaSalle St. Suite 1300
Chicago, Illinois  60602

/s Vangelis Economou

10