2008 WL 753951
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois,
Eastern Division.

AGT CRUNCH CHICAGO, LLC, a Delaware
limited liability company, successor-in-interest
to Bally Total Fitness Corporation, Plaintiff,
v.
939 NORTH AVENUE COLLECTION,
LLC, a Delaware limited liability
company, successor-in-interest to North
Avenue Collection, LLC, Defendant.

No. 07 C 2986.
|
March 18, 2008.

**Attorneys and Law Firms**

Patrick Thomas Stanton, Seth Mann Rosenberg, Schwartz, Cooper, Greenberg & Krauss, Chicago, IL, for Plaintiff.

Mark A. Flessner, Anthony Thomas Eliseuson, Sonnenschein, Nath & Rosenthal, LLP, Chicago, IL, for Defendant.

*MEMORANDUM OPINION AND ORDER*

JAMES B. ZAGEL, District Judge.

**\*1** Plaintiff, AGT Crunch Chicago, LLC ("Crunch"), has filed suit seeking a declaratory judgment that in the Lease governing its relationship with Defendant, 939 North Avenue Collection LLC ("939 North"), the phrase "Real Estate Taxes in the Base Year" refers to the Real Estate Taxes levied or assessed by the Cook County taxing authority in that year. In addition, Crunch seeks a declaratory judgment that 939 North's right to choose the measure of real estate taxes for a given year applies only to the years subsequent to the Base Year, that Crunch is not in default under the Lease, and that by declaring a default and drawing upon Crunch's letter of credit, 939 North has breached the Lease. Crunch also seeks attorneys' fees and costs pursuant to Section 14.3 of the Lease. Defendant has filed a motion to dismiss the complaint, arguing that Plaintiff's construction of the Lease

is not supported by its plain language. For the reasons stated below, Defendant's motion is denied.

**I. Background**

For purposes of this motion, I accept the following facts alleged in Plaintiff's complaint as true:

Plaintiff, AGT Crunch Chicago, LLC ("Crunch"), leases space from 939 North Avenue Collection, LLC ("939 North"), in which it operates a fitness club. The parties' predecessors-in-interest executed a lease governing their relationship as of January 5, 2001 (the "Lease"). The Lease requires that, each year, Crunch pay a share of the increase in Real Estate Taxes between the current year and the "Real Estate Taxes in the Base Year," which the parties agree is 2004. To calculate the share of the tax increase allocated to Crunch each year, the Lease specifically provides:

> Tenant shall pay to Landlord, on the first day of each calendar month, commencing on the Additional Rent Commencement Date (defined in Section 5.4 hereof) and continuing throughout the balance of the Term of the Lease, one-twelfth (1/12th) of the increase in Tenant's Proportionate Share (or Prorata Share [defined hereinafter], as the case may be) of Real Estate Taxes, for that calendar year, over Tenant's Proportionate Share (or Prorata Share, as the case may be) of Real Estate Taxes, in the Base Year.

As defined above, Crunch's share of the tax increase is determined by a simple formula: Crunch must pay 939 North a portion (one-twelfth) of the amount by which Real Estate Taxes "for" a calendar year exceeds the Real Estate Taxes "in" the Base Year. The first part of this equation, the calculation of Real Estate Taxes "for th[e] calendar year" subsequent to the Base Year, is undisputed. Recognizing that in Cook County, taxes based on a property's value in one year are paid the following year, the Lease explicitly provides 939 North the option to treat Real Estate Taxes "for" a calendar year either as the taxes paid in that year, or the taxes assessed against the property in that year and due the following year. While the parties agree on the meaning of the first part of

AGT Crunch Chicago, LLC v. 939 North Ave. Collection, LLC, Not Reported in...

2008 WL 753951

the equation, they dispute the calculation of Real Estate taxes "in the Base Year," which is the amount subtracted from Crunch's share of Real Estate Taxes "for [t]he calendar year" to determine its share of the yearly tax increase.

**\*2** On February 16, 2007, 939 North informed Crunch by letter that it had performed an audit of the Lease and declared Crunch in default under the Lease for failing to pay its share of the Real Estate Tax increase, as calculated using the Real Estate Taxes *paid in* 2004. In the letter, 939 North demanded that payment in addition to late fees. Responding with a letter dated March 14, 2007, Crunch asserted an alternative interpretation of the Lease in support of the amount it had paid. On April 20, 2007, attorneys for 939 North sent Crunch a "final notice" of default, demanding payment of $245,497.46 for its share of Real Estate Taxes and late fees. In addition, the final notice provided that if 939 North did not receive payment from Crunch within five days, 939 North would draw on Crunch's letter of credit, which Crunch would be obligated to replenish. Crunch then filed the complaint in this case, seeking a judgment declaring that its interpretation is correct, and that therefore Crunch is not in default under the Lease. Defendant, 939 North, then filed a motion to dismiss Plaintiff's claim under 12(b) (6), alleging that Plaintiff's construction of the Lease is not supported by its plain language, and therefore, Plaintiff's complaint fails as a matter of law.

At core, the parties dispute the meaning of "Real Estate Taxes in the Base Year." The meaning of this phrase is crucial to the calculation of Crunch's share of the Real Estate Taxes each year. Crunch interprets "Real Estate Taxes in the Base Year" as the taxes levied or assessed against the property in the Base Year, 2004. These taxes are based on the value of the property in the 2004 and are actually paid in 2005. In contrast, 939 North interprets "Real Estate Taxes in the Base Year" as the taxes actually paid in 2004, based on value of property in 2003. Because the value of the property increased after the completion of construction at or about 2003, the Real Estate Taxes assessed in 2003 (and paid in 2004) were much lower than those assessed in 2004 (and paid in 2005). Accordingly, if "Real Estate Taxes in the Base Year" refers to the lower amount, as advanced by 939 North, Crunch bears responsibility for a much higher proportionate share than if the phrase refers to the taxes assessed in 2004.

## II. Discussion

Defendant asserts that Crunch's claim relies on an interpretation of the Lease that is not supported by its plain language, and, therefore, asks the court to resolve the purely legal issue of contract construction by dismissing Crunch's complaint under Rule 12(b)(6). In contrast, Crunch claims that its complaint states a cause of action necessitating declaratory relief; moreover, "if the declaratory judgment will clarify and settle the disputed legal relationships and afford relief from uncertainty and controversy that created the issues, it is usually resolved rather than dismissed." *NUCOR Corp. v. Aceros y Maquilas de Occidente, S.A. de C.V.,* 28 F.3d 572, 578 (7th Cir.1994).

### A. Motion to Dismiss

**\*3** A motion to dismiss tests the sufficiency of a complaint, not the merits of a case. *Autry v. Northwest Premium Servs., Inc.,* 144 F.3d 1037, 1039 (7th Cir.1998). I must accept all well-pleaded factual allegations in the complaint as true, drawing all reasonable inferences from those facts in Plaintiff's favor. *Cleveland v. Rotman,* 297 F.3d 569, 571 (7th Cir.2002). I may grant the motion only if "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). That said, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* —— U.S. ——, —— – ——, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007) (internal citations and quotations omitted).

When considering a contract appended to pleadings in the context of a motion to dismiss, I need not accept the plaintiff's allegations as to the meaning of the document; I "can independently examine the document and form [my] own conclusions as to the proper construction and meaning to be given the material." *Rosenblum v. Travenbyus.com Limited,* 299 F.3d 657, 661 (7th Cir.2002) (quoting 5 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL 2D, § 1327 at 766 (1990)). In doing so, if I find that the contract is unambiguous, I may rule on the interpretation of the contract as a question of law. *Echo, Inc. v. Whitson Co.,* 121 F.3d 1099, 1104 (7th Cir.1997); *see also First Ins. Funding Corp. v. Fed. Ins. Co..,* 284 F.3d 799, 804 (7th Cir.2002) ("Interpretation of an unambiguous contract ... poses a question of law."). However, if I find that the contract is ambiguous, which means that "it is capable of being

AGT Crunch Chicago, LLC v. 939 North Ave. Collection, LLC, Not Reported In...
2008 WL 753951

understood in more sense than one,"*Farm Credit of St. Louis v. Whitlock,* 144 Ill.2d 440, 163 Ill.Dec. 510, 581 N.E.2d 664, 667 (Ill.1991), then "its construction is a question of fact for the trial court to determine."*Echo,* 121 F.3d at 1105;*see also LaSalle Nat'l Trust v. ECM Motor Co.,* 76 F.3d 140, 145 (7th Cir.1996) (same). Moreover, "[o]nly if the language is unclear and cannot be disambiguated without reference to facts that can be determined only by means of a trial ... is there any reason to burden the parties with a trial on the meaning of the contract."*In re Comdisco, Inc.,* 434 F.3d 963, 968 (7th Cir.2006).

**B. Governing Principles of Contract Construction**

Under Illinois law, I must construe contracts as a whole, giving effect to all terms of the contract, in the light of their ordinary and natural meanings.*LaSalle,* 76 F.3d at 144;*see also Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Prod., Inc.,* 212 F.3d 373, 378 (7th Cir.2000). This means that I "should accept the interpretation that best harmonizes [all] provisions" of the contract, rendering all terms consistent with one another.*Indem. Ins. Co. of N. Am.,* 348 F.3d 628, 633 (7th Cir.2003); *see also Nielson v. Piper, Jaffray, & Hopwood, Inc.,* 66 F.3d 145, 148 (7th Cir.1995) ("We also apply a cardinal principle of contract interpretation: we will read the document as a whole and give effect to all of its provisions and render them consistent with one another."). In construing the contract to determine the intention of the parties, I "must give effect to every word or term employed by the parties and reject none as meaningless or surplusage."*Bankers Life Co. v. Int'l Tel. & Tel. Co.,* 239 F.2d 621, 623 (7th Cir.1956). Just as I will consider all terms included in a contract to be meaningful, I will also find meaning in a party's failure to include a term. Accordingly, contracts are presumed to include all material terms, and in interpreting a contract, "no words can be added to the contract so as to change the plain meaning of the parties as expressed therein."*Heath v. A.B. Dick Co.,* 253 F.2d 30, 34 (7th Cir.1958) (*quoting Wm. J. Lemp Brewing Co. v. Ems Brewing Co.,* 164 F.2d 290, 292–293 (7th Cir.1947)); *see also GNB Battery Tech., Inc. v. Gould, Inc.,* 65 F.3d 615, 622 (7th Cir.1995) ("When interpreting a contract, we cannot read terms into the language that are not expressly stated, nor will we ignore terms that are explicitly written therein.").

**C. When Construed as a Whole, the Lease is Ambiguous**

**\*4** Both Crunch and 939 North assert plausible interpretations of the contested phrase, "Real Estate Taxes in the Base Year."Accordingly, the Lease is capable of

being understood in more than one sense, and this ambiguity renders the Lease's construction a question of fact for the trial court to determine. *Farm Credit,* 163 Ill.Dec. 510, 581 N.E.2d at 667. In an effort to construe the Lease as a whole, both parties rely on other terms in the Lease to support their competing interpretations. However, neither party finds definitive support for its interpretation.

To define the key phrase at issue, "Real Estate Taxes in the Base Year," Crunch relies on the definition of Real Estate Taxes provided earlier in the same section of the Lease. This definition states that " 'Real Estate Taxes' shall mean thirty five (35%) of general and special taxes, assessments, duties and levies *charged, levied and assessed* against the Project" (emphasis added). Therefore, according to Crunch, "Real Estate Taxes in the Base Year" are those "charged, levied and assessed" in the Base Year, 2004. Considering Cook County's taxing scheme, under which taxes based on the property value in a given year are due the following year, this means that "Real Estate Taxes in the Base Year" are those taxes based on the value of the property in 2004 and due in 2005.

939 North refutes Crunch's interpretation of the Lease, claiming that Crunch impermissibly lifts the definition of "Real Estate Taxes" from its intended context. Moreover, according to 939 North, the dispute turns not on *what* the phrase "Real Estate Taxes" means, but rather *when* such taxes can be attributed to a calendar year. This key "when" question is not addressed by the definition of Real Estate Taxes earlier in the Lease. In contrast to Crunch, 939 North interprets "Real Estate Taxes in the Base Year" to refer to the taxes actually paid in the Base Year (2004) and based on the value of the property in 2003. In asserting an alternative interpretation of the phrase at issue, 939 North also aims to achieve clarity by drawing from terms elsewhere in the Lease. Using the language in the Lease as an interpretive guide, 939 North asserts that the use of the preposition "in" demonstrates that the parties intended the phrase at issue to mean the taxes *paid* in the Base Year; throughout the Lease, the parties use the preposition "in" if taxes are to be attributed based upon when they are paid; alternatively, if taxes are to be attributed based upon when they are assessed, the parties use the preposition "for."

Crunch denies that the parties adhere to this alleged distinction elsewhere in the Lease. Specifically, Crunch claims that the Lease's treatment of the word "for" eviscerates the distinction between "in" and "for" relied upon by 939

**AGT Crunch Chicago, LLC v. 939 North Ave. Collection, LLC, Not Reported in...**

2008 WL 753951

North. To support this proposition, Crunch cites an earlier provision in the same section:

> Real Estate Taxes "for" a calendar year shall be deemed to refer, at Landlord's option, either to Real Estate Taxes payable in such a calendar year or to Real Estate Taxes levied, assessed or otherwise accrued or imposed for such a calendar year without regard to when such Real Estate taxes are payable.

**\*5** As demonstrated by this provision, the parties agreed that the preposition "for" may be associated with either taxes "payable" or "levied, assessed or otherwise accrued or imposed," explicitly rejecting the strict association between "in" and "payable" and "for" and "levied."

Because both parties draw appropriately on other terms in the Lease to posit plausible interpretations of "Real Estate Taxes in the Base Year," the Lease is ambiguous, creating a question of fact to be determined by the trial court.

### D. The Lease is Ambiguous in Light of Cook County's Taxing Scheme

Cook County's taxing scheme, under which taxes based on the property value in a given year are due the following year, further complicates the interpretation of "Real Estate Taxes in the Base Year."Based on its understanding of Cook County's taxing scheme, 939 North asserts that Crunch's interpretation of the phrase at issue, Real Estate Taxes "charged, levied and assessed in the Base Year," in fact aligns with its own interpretation, "paid in the Base Year;" in both cases, the taxes are those based on the value of the property in 2003 and due in 2004. To reach this result, 939 North posits that in this context, "charge" means "to bill," based on Black's Law Dictionary and the plain meaning of the word as defined in several leading dictionaries.

Crunch disagrees that its interpretation leads to the same result as 939 North's interpretation, establishing that Black's Law Dictionary defines "charged" as "to impose a burden, duty, obligation, or lien; to create a claim against a property; to assess."Accordingly, Real Estate Taxes "charged" in the Base Year are based on the value of the property in the Base Year, 2004, and are actually paid in 2005. Both parties rely on plausible definitions of the word, "charged," to support their competing positions. To be sure, Crunch's definition, which equates "charged" with "assessed," renders

the word "assessed" in the Lease's definition of Real Estate Taxes ("charged, levied and assessed") superfluous, contravening the basic principle of contract construction that no term may be read as surplusage. *Bankers,* 239 F.2d at 623. Nevertheless, under the Cook County taxing scheme, Crunch's interpretation is itself ambiguous, underscoring the need for proper interpretation of "Real Estate Taxes in the Base Year" by the trial court.

### E. Construing the Terms Consistently with One Another, the Lease is Ambiguous.

939 North argues that Crunch's interpretation violates the principal rule of contract construction that all terms should be read consistently with one another because it nullifies another provision of the Lease. However, whether or not Crunch's interpretation in fact nullifies another provision of the Lease is unclear. Therefore, 939 North's argument does not clarify the ambiguity in the interpretation of "Real Estate Taxes in the Base Year."

**\*6** 939 North contends that Crunch's interpretation of the Lease nullifies the Additional Rent provision under Section 5.4, which mandates payment of Additional Rent (including the Real Estate Taxes in dispute) "on the first day of [the] calendar year following the Base Year," January 1, 2005. Since Crunch interprets "Real Estate Taxes in the Base Year" as those due in 2005, the Real Estate Taxes portion of the Additional Rent would be the same as the Real Estate Taxes in the Base Year under Crunch's understanding of the Lease. Thus, according to 939 North, Crunch's position impermissibly nullifies the Additional Rent provision of the Lease. However, Crunch correctly points out that "Additional Rent" comprises more than just Crunch's share of the Real Estate Taxes. The Lease provides specifically:

> Additional Rent shall include, and shall not be limited to: Common Area Maintenance Charges, Office/Health Club Common Area Maintenance Charges, Real Estate Taxes and any other sum coming due to Landlord or advanced by Landlord in performance of its rights or obligations.

The merits in both parties' arguments render it difficult to determine whether Crunch's interpretation indeed nullifies the Additional Rent provision of the Lease. Despite 939 North's argument, the phrase "Real Estate Taxes in the Base Year"

Case: 1:15-cv-09180 Document #: 19-4 Filed: 02/09/16 Page 5 of 5 PageID #:134

AGT Crunch Chicago, LLC v. 939 North Ave. Collection, LLC, Not Reported in...

2008 WL 753951

is sufficiently ambiguous to create a question of fact for the trial court to resolve.

### F. Adding New Language

When interpreting a contract, I cannot read terms into the language that the parties did not express directly. *GNB Batter Tech., Inc. v. Gould, Inc.,* 65 F.3d at 622; *Heath,* 253 F.2d at 34. However, adhering to this fundamental rule of contract construction fails to clarify the meaning of "Real Estate Taxes in the Base Year" because it arguably supports either party's interpretation of the Lease. Crunch claims that 939 North impermissibly inserts the word "paid" between "Taxes" and "in" in the phrase, "Real Estate Taxes in the Base Year." At the same time, 939 North claims that Crunch attempts to lift the definition of "Real Estate Taxes" out of context and add it to the phrase "Real Estate Taxes in the Base Year." That each

party must add terms to the Lease to support its interpretation underscores the ambiguity of the phrase, "Real Estate Taxes in the Base Year." This ambiguity creates a question of fact that cannot be resolved under a 12(b)(6) motion to dismiss.

### III. Conclusion

For the foregoing reasons, Crunch's contract claim is not susceptible to dismissal for failure to state a claim because the contract is not unambiguous. Therefore, 939 North's motion to dismiss is denied.

### All Citations

Not Reported in F.Supp.2d, 2008 WL 753951

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

 © 2016 Thomson Reuters. No claim to original U.S. Government Works.