Case: 1:15-cv-09180 Document #: 19-5 Filed: 02/09/16 Page 1 of 3 PageID #:135

295 F.2d 284
United States Court of Appeals
Seventh Circuit.

Tony WILLIAMS, Plaintiff-Appellee,

v.

MERCURY RECORD CORPORATION,
Defendant-Appellant,

No. 13283.
|
Oct. 9, 1961.

Action for declaratory judgment as to effect of a contract between defendant record company and five individuals, including the plaintiff who were members of singing quintet. The United States District Court for the Northern District of Illinois, Eastern Division, Michael L. Igoe, J., entered a judgment adverse to the record company and it appealed. The Court of Appeals, Knoch, Circuit Judge, held that the contract which referred to their group name throughout did not, by clause prohibiting artist from performing for any other record company, restrict member of quintet from performing individually for another record company.

Affirmed.

**Attorneys and Law Firms**

 **\*284**  Mayer Goldberg, Leonard L. Levin, Chicago, Ill., for defendant-appellant.

Richard M. Shelton, Chicago, Ill., for appellee.

Before HASTINGS, Chief Judge, and KNOCH and KILEY, Circuit Judges.

**Opinion**

KNOCH, Circuit Judge.

Under authority of the Federal Declaratory Judgment Act, Title 28 U.S.C.A. § 2201, plaintiff herein, Tony Williams, filed complaint for declaratory judgment in the District Court. Mr. Williams' complaint alleges that, as members of a singing quintet known as 'The Platters', he and the other four members of the singing group, entered into a contract with defendant, Mercury Record Corporation (hereinafter called 'Mercury') on or about February 19, 1959. Mr. Williams

stated that he had been advised by Mercury that he could not perform individually for any other recording company during the life of the aforesaid contract, and that legal action would be instituted against him if he should attempt such performance. Mr. Williams prayed judgment, in this action, to the effect that the contract in question did not restrict him, individually, from entering into other contracts with third parties respecting his services in his individual capacity as a singer.

Mercury answered averring that the contract was executed with Mr. Williams and the other four singers, both individually and as a group, and moved for judgment on the pleadings. Mr. Williams moved to strike Mercury's motion for judgment on the pleadings and renewed his own plea that the District Court find and declare that the written contract did not prohibit his accepting individual employment as a singer. A memorandum filed in support of Mr. Williams' motion included, as exhibits, an affidavit, other contracts, and related correspondence. Mercury moved to strike these exhibits on the ground that Mr. Williams' complaint had asserted no ambiguity in the contract sought to be construed, but that he had, nevertheless, submitted immaterial parol evidence in an effort to modify the provisions of the written contract. In the alternative, Mercury suggested that if the District Court concluded that the contract could be construed without resort to parol matters, Mercury felt if had stated its position adequately; but if the District Court should conclude that the contract was ambiguous and that resort to parol matters would be necessary, then Mercury requested an opportunity  **\*285** to submit its own affidavits and exhibits; or that the Court direct the pleadings be amended to broaden the issues and the cause be set for trial.

On October 28, 1960, Mercury's motion for judgment on the pleadings and Mr. Williams' motion to strike Mercury's motion were both argued and both taken under advisement. On December 6, 1960, the District Court filed a Memorandum Opinion construing the contract in Mr. Williams' favor. The Court did consider the contract itself, copy of which was affixed to the original complaint as an exhibit. The Court also considered and commented on some of the other exhibits which had been filed in support of Mr. Williams' motion to strike. On the same day, in accordance with that Memorandum Opinion, Mr. Williams' motion to strike Mercury's motion for judgment on the pleadings was sustained. Mercury's motion for judgment on the pleadings was overruled. In addition, the cause was set for trial on February 1, 1961.

WESTLAW   © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Under date of December 29, 1960, counsel for Mr. Williams served upon counsel for Mercury a document entitled: 'Notice of Motion and Motion for Judgment' which reads:

'Please Take Notice that upon the Memorandum Opinion delivered by this court December 6, 1960, and the briefs heretofore filed, the undersigned will move this court at the United States Court House, Chicago, Illinois, on the 3rd day of January, 1961, at 10 o'clock A.M., or as soon after as counsel may be heard, for a declaratory judgment.'

No other written motion for judgment appears in the record submitted for our consideration. On January 3, 1961, after oral argument, the District Court entered an order granting Mr. Williams the declaratory relief sought by him, to the effect that the contract bound him only as to his performance as a member of the singing group, 'The Platters.'

Mercury moved for a new trial and for reconsideration of the judgment, in support of which Mercury submitted an affidavit, other contracts, related documents and correspondence. Mr. Williams moved to strike the exhibits to Mercury's motion for reconsideration, to deny the motion, and to set a date for hearing on damages. The District Court denied the motion for an new trial and the motion for reconsideration of the judgment of January 3, 1961. This appeal followed. Mercury characterizes as error both the ruling on construction of the contract and the failure to grant Mercury a full hearing.

The contract in question here is headed as follows:

#### 'Recording Agreement

#### Mercury Record Corporation

#### Date of Execution: Feb. 19, 1959.

Name: Tony Williams, David Lynch, Zola Taylor, Paul Robi, Herbert Reed, a/k/a 'The Platters'.

Address: c/o Buck Ram, 1608 N. Argyle, Hollywood, California.

We hereby employ you for the purposes of making phonograph records.'

The contract provides for a minimum of 18 phonograph record sides during each six-month period; for royalties and method of computation, with a minimum guaranty of $50,000 annually; for a term of three years, with an option to Mercury to extend the contract for three additional years.

The provision at issue here is Paragraph 5 of the contract which reads in part as follows:

'It is agreed that the services of the Artist are unique and extraordinary. Therefore, the Artist agrees that during the term of this contract, he will not perform any material for any person other than Mercury Record Corporation, for reproduction of any kind of his performances or any part thereof, * * *.'

Mercury argues that this paragraph standing alone is clear and unambiguous and binds Mr. Williams not only as a **\*286** member of the group but also as an individual singer.

We believe that the paragraph standing alone is ambiguous in that it does not identify 'the Artist'. Recourse must be had to other portions of the contract. Paragraph 17 states:

''Artist' means the party or parties hereby contracting with Mercury, whether male or female, singular or plural.'

The artist parties to the contract are listed at the outset not only by their individual names but also by the group name. The wording of the minimum recording requirements, the provisions for payment of royalties, repeated references throughout the body of the contract to the group name, and the use of the group name in the signature, all support the construction that Mercury was dealing with these singers only as a group singing together, and not as so many individuals singing solo performances.

We do not reach the questions concerning parol evidence as we are of the opinion that the sole ambiguity found in Paragraph 5 of the contract is resolved by recourse to the other portions of the contract itself. Mercury stated, in its motion to strike those exhibits attached to Mr. Williams' motion to strike Mercury's motion for judgment on the pleadings, that:

'If this Court concludes that the contract in question is to be construed by the Court without resorting to parol matters and secondary rules, we believe that we have stated our position adequately.'

Therefore we do not reach the question of whether or not Mercury was given an opportunity to submit parol evidence to meet and rebut parol evidence submitted by Mr. Williams. Thus mercury was not prejudiced by the failure to hold a trial on the date set.

Mercury argues that the contract must be construed as joint and several under the applicable Illinois law; and as this contract admittedly imposed a joint obligation on the singing group, therefore, by statute the contract imposed a joint and several obligation because '* * * all joint obligations and covenants shall be taken and hold to be joint and several obligations and covenants.' (Vol, II, Ill. Rev.Stats.1959, Ch. 76, § 3, p. 423) In support of its theory that the joint and several obligation imposed by statute must of necessity mean that the singers are bound with respect to their performances whether they sing together or apart, Mercury cites Bauer v. Sawyer, 1955, 6 Ill.App.2d 178, 126 N.E.2d 844; and Bank of Topeka v. Eaton, C.C.D. Mass., 1899, 95 F. 355. However, these cases are not helpful in the factual situation before us. The Bauer case concerned twelve physicians who signed a partnership agreement which limited their right to practice in the event of their withdrawal from the partnership. Five of the physicians, less than a majority, sued to enjoin a breach by one. The remaining six physicians were also made defendants, but no relief was claimed against them. The Illinois Appellate Court, second district, held that the five plaintiffs were not deprived of their remedy under their contract or their right to restrain a breach by the fact that the other six physicians, who were made party defendants, did not elect to join them as plaintiffs. In the Eaton case, a Kansas corporation sued some of the members of a voluntary association on a written promise signed by them. The action was brought in Massachusetts. The pertinent Kansas statute provided that all contracts, which at common law were joint only, would be construed as joint and several, and that suits on joint obligations might be prosecuted against any one or more of those who were liable. The massachusetts statute provided that where several persons were severally liable on written contracts, all or any could be sued in the same action. The Court in the Eaton case said that at common law the state of the pleadings would be fatal to plaintiff because in a suit on a joint and several promise, all promisors had to be made defendants, or only one of them. The Court held, however, that **\*287** the position of the plaintiff was sustained as to the legal effect of the contract by the Kansas statute, and, as to the remedy sought, by the Massachusetts statute.

From our study of the contract itself, without recourse to any of the other evidence considered by the District Judge, we have arrived at precisely the same conclusion as the trial court. The judgment of the District Court is affirmed.

**All Citations**

295 F.2d 284

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.