**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

VICTORY RECORDS, INC.,          )

                            )         **Civil Action No. 1:15-cv-09180**

        **Plaintiff,**         )

                            )         **JURY DEMAND**

                            )

        **v.**                 )         **JUDGE ZAGEL**

                            )

TOMAS KALNOKY, individually and doing   )

business as STREETLIGHT MANIFESTO,   )

                            )

        **Defendant.**       )

**DEFENDANT TOMAS KALNOKY'S REPLY**
**IN FURTHER SUPPORT OF MOTION TO DISMISS**

Defendant Tomas Kalnoky hereby submits this Reply in Further Support of his Motion to Dismiss Counts II, III, and IV of the Complaint filed by Victory Records, Inc. ("Victory") and states as follows:

**I.      Introduction.**

Victory is impermissibly attempting to turn its 2002 Recording Agreement with the musical group "Streetlight Manifesto" (the "Recording Agreement") into a solo artist recording agreement with Tomas Kalnoky, the lead singer of Streetlight Manifesto. This is exactly what Mercy Recording Corp. ("Mercury") attempted to do with Tony Williams, the lead singer of "The Platters," in *Williams v. Mercury Recording Corp.*, 295 F.2d 284 (7th Cir. 1961).[1] The Seventh

---

[1] In attempting to distinguish *Williams*, Victory notes that the group name was used in the signature for The Platters' recording agreement with Mercury while, in the instant case, "each member signed [the Recording Agreement] on their own individual signature line." (Dkt. No. 26, Resp. in Opp. to Mot. to Dismiss at p. 17). While this is true, Victory has already conceded in its Complaint that the members signed the Recording Agreement "on behalf of [Streetlight Manifesto]." (Dkt. No. 1, Compl. ¶ 21).

Circuit rejected Mercury's position in 1961 and, respectfully, this Court should reject Victory's position today.

As *Williams* makes clear, when a record label signs a recording agreement with a band, that agreement does not automatically bind each of the members individually. Rather, such terms must be bargained for: "[t]he terms of an agreement covering a potential solo artist entail separate negotiations when the group is first signed." M. William Krasilovsky and Sidney Shemel, *This Business of Music* 17 (10th ed. 2007) (copy attached as Exhibit 1). If Victory had wanted to acquire rights in Kalnoky, individually, it needed to separately bargain for those rights. It failed to do so.

As such, Kalnoky, in his individual capacity, is not bound to record exclusively for Victory; Kalnoky, in his individual capacity, is not bound by the Recording Agreement's "re-recording" provision; and Kalnoky, in his individual capacity, did not transfer to Victory the copyrights in the sound recordings he created as a solo artist.[2] Respectfully, the Court should dismiss Victory's Complaint as it pertains to Kalnoky, individually.

## II. Kalnoky's Response to Victory's Arguments.

In response to Kalnoky's Motion to Dismiss, Victory makes three substantive arguments. These arguments fail for the reasons set forth below.

---

[2] There are two types of copyrights involved in a musical recording. First, there is a copyright in the musical composition, which consists of music, including any accompanying words (*i.e.*, the song). *See* U.S. Copyright Office, Circular 56a: "Copyright Registration of Musical Compositions and Sound Recordings." Second, there is a copyright in the sound recording, which results from the fixation of a series of musical, spoken, or other sounds, in a tangible medium (*i.e.*, the master recording or "Master"). (*Id*.) In the instant case, Victory claims copyright ownership only with respect to sound recordings; it does not purport to own the copyrights in any of Kalnoky's or Streetlight Manifesto's songs.

### A. Paragraph 21(a).

Victory first contends that, pursuant to the "plain meaning" of Paragraph 21(a) of the Recording Agreement, Kalnoky and the other members of Streetlight Manifesto have been bound to that agreement, in their individual capacity, "from the outset." (Dkt. No. 26, Resp. in Opp. to Mot. to Dismiss at p. 16). To support this contention, Victory cites to the following provision of Paragraph 21(a): "Each person added to Artist, as a replacement or otherwise, shall become bound by the terms and conditions of this agreement…." (*Id.*)[3] According to Victory, Kalnoky and the other members of Streetlight Manifesto were "'otherwise' added" to Streetlight Manifesto "either before the Agreement was drafted but in no event later than when they each signed the 2002 Agreement" and, therefore, are somehow bound to Victory in their individual capacity (*i.e.*, as solo artists). (*Id.*)

Respectfully, Victory's interpretation is incorrect. By its plain terms, the foregoing provision of Paragraph 21(a) addresses the circumstance where a replacement member (or new member) is added to the band during the term of the agreement. (Dkt. No. 19-1, Recording Agreement ¶ 21(a)). It simply provides that, under that circumstance, the replacement member (or new member) is bound by the 2002 Recording Agreement in his capacity as a member of the group, just like the existing members of the band. (*See id.*) It does not grant Victory exclusive rights in the individual services of the members of Streetlight Manifesto. (*See id.*)

---

[3] Victory also cites to a provision of Paragraph 21(a) that states, "If any individual comprising Artist refuses, neglects or fails to perform together with the other individuals comprising Artist….[s]aid individual shall remain bound by this agreement…." (*Id.* at p. 16). Victory contends that the phrase "shall remain bound by this agreement" indicates that "the individual members must have been bound by the 2002 Agreement in the first place." (*Id.* at pp. 16-17). Respectfully, this is true, but misses the point. The individual members were bound "in the first place" only in their capacity as members of the group Streetlight Manifesto, not in their individual capacity (*i.e.*, as solo artists).

3

Indeed, Victory's interpretation of Paragraph 21(a) would render the very next paragraph of the Recording Agreement entirely superfluous. Paragraph 21(b) sets forth specific and detailed terms by which Victory may acquire "the individual and exclusive services of each of the individual(s) comprising Artist [*i.e.*, Streetlight Manifesto] for the purpose of making Records." (*Id.* ¶ 21(b)).[4] If, as Victory suggests, it had already acquired such rights in the individual members – "from the outset" nonetheless – Paragraph 21(b) would be entirely superfluous. (*See id.*) Thus, Victory's interpretation "violate[s] the age-old principle that contracts must not be interpreted so as to render clauses superfluous or meaningless" and, respectfully, should be rejected. *Hostmark Inv'rs Ltd. v. Geac Enter. Sols., Inc.*, 2002 WL 1732360, *3 (N.D. Ill. July 26, 2002) (copy attached as Exhibit 2).

Had Victory truly acquired exclusive rights in the individual services of each of the individual members of Streetlight Manifesto "from the outset," the parties could have included a simple term to that effect in the Recording Agreement.[5] They failed to do so. (*See* Dkt. No. 19-1, Recording Agreement). The absence of such a term is as meaningful in construing the Recording Agreement as the terms contained therein and, respectfully, provides further support for Kalnoky's position. *See AGT Crunch Chicago, LLC v. 939 N. Ave. Collection, LLC*, 2008 WL 753951, *3 (N.D. Ill. Mar. 18, 2008) (Zagel, J.) ("Just as I will consider all terms included in a

---

[4] The Recording Agreement's reference in this provision (and elsewhere) to the "individual(s) comprising Artist [*i.e.*, Streetlight Manifesto]" evidences the recognized distinction between Streetlight Manifesto and its individual member(s). These references make no sense if, as Victory implies, the term "Artist" already includes the individual member(s) of the group.

[5] For instance, they could simply have defined "Artist" and "You" as "Streetlight Manifesto and each of its members in their individual capacity." Or, they could have included a term stating that, "The individual members of Streetlight Manifesto hereby agree to be bound by this agreement in their individual capacity."

4

contract to be meaningful, I will also find meaning in a party's failure to include a term") (copy previously attached as Dkt. No. 19-4).

Victory's position in this case – that the Recording Agreement conveys rights in Kalnoky's exclusive individual services despite any contractual provision to that effect – is similar to the position it espoused in *Bucciarelli-Tieger v. Victory Records, Inc.*, 488 F. Supp. 2d 702 (N.D. Ill. 2007) (copy attached as Exhibit 3). In that case, Victory claimed that its recording agreement with the musical group "Hawthorne Heights" was exclusive despite the absence of an exclusivity provision. *Id.* at 705-08. When Hawthorne Heights sought a declaratory judgment that the agreement was non-exclusive, Victory moved to dismiss claiming that Hawthorne Heights' interpretation of the agreement was "absurd." *Id.* at 707.[6] Judge Moran rejected Victory's argument, noting simply that "[t]he agreement contains no exclusivity provision…." *Id.* at 708. Kalnoky respectfully submits that, just like Judge Moran in *Bucciarelli-Tieger*, this Court should reject Victory's attempt to claim rights in the individual services of Kalnoky when those rights are simply not contained in the Recording Agreement.

### B. Paragraph 21(b).

Although not entirely clear, Victory seems to suggest that it acquired rights in Kalnoky's individual services under Paragraph 21(b) of the Recording Agreement because Kalnoky allegedly "refused, neglected or failed to perform with the other individuals comprising [Streetlight Manifesto]." (*See* Dkt. No. 26, Resp. in Opp. to Mot. to Dismiss at pp. 4-5, 18-20). By its terms, however, Paragraph 21(b) only applies to a so-called "leaving member," *i.e.*, one who refuses,

---

[6] Just as in *Bucciarelli-Tieger*, Victory claims that Kalnoky's interpretation of the Recording Agreement is "absurd." Victory, however, fails to explain what, exactly, is "absurd" about Kalnoky's interpretation or why it is "absurd" in this case but not in *Williams v. Mercury Recording Corp.*

neglects or fails to perform <u>as a member of the group</u>. *See Larkin v. Polygram Records, Inc.*, 1986 WL 6174, *3 (S.D.N.Y. May 23, 1986) (noting that the terms of the "leaving member" provision of a recording agreement "contemplate someone who refuses, neglects, fails to perform or leaves the group") (copy attached as Exhibit 4).[7] As Victory concedes, Kalnoky "never 'left' [Streetlight Manifesto]," (Dkt. No. 26, Resp. in Opp. to Mot. to Dismiss at p. 17), and, therefore, he has never refused, neglected or failed to perform <u>as a member of the group</u>, (*see* Dkt. No. 1, Compl. ¶¶ 3, 10, 11, 18, 68, 83). The "leaving member" provision has no applicability to Kalnoky and cannot provide a basis for Victory to have acquired rights in his individual services.

### C. The 2013 Agreement.

Finally, Victory suggests that it somehow acquired rights in Kalnoky's individual services through a factually inaccurate recital in a 2013 agreement. (Dkt. No. 26, Resp. in Opp. to Mot. to Dismiss at p. 15).[8] That recital characterizes the 2002 Recording Agreement as "between Victory Records, Inc. [] and Tomas Kalnoky, professionally known as 'Streetlight Manifesto.'" (*Id.*) This recital, however, is simply inaccurate. (Dkt. No. 19-1, Recording Agreement). On its face, the Recording Agreement is between Victory and Streetlight Manifesto – <u>not</u> Victory and "Tomas Kalnoky, professionally known as 'Streetlight Manifesto.'" (*Id.* at p. 1).[9] Victory cannot change

---

[7] Victory itself characterizes this provision as the "Leaving Member Provision." (Dkt. No. 26, Resp. in Opp. to Mot. to Dismiss at p. 5). As such, Victory cannot very well argue that it applies to Kalnoky since he has admittedly "never 'left' [Streetlight Manifesto]," (Dkt. No. 26, Resp. in Opp. to Mot. to Dismiss at p. 17),

[8] In its Response, Victory claims that the 2013 agreement was "integrated with and made part of the 2002 Agreement." (*Id.* at p. 2, fn 1). There is no term to this effect in the 2013 agreement. (*See* Dkt. No. 27, Ex. A).

[9] To be clear, Streetlight Manifesto is – and always has been – a band that performs together as a group; it is not simply a name under which Kalnoky performs as a solo artist. By contrast, Toh Kay is, in fact, the name under which Kalnoky performs as a solo artist. Thus, it is not as if Kalnoky simply calls himself Streetlight Manifesto on one day and Toh Kay on another. Rather, there is a substantive and artistic difference between Streetlight Manifesto (the band) and Toh Kay

this fact through an inaccurate recital in the 2013 agreement – especially when there is no reference in the operative portion of the 2013 agreement to Kalnoky's being substituted, individually, for Streetlight Manifesto under the Recording Agreement. *See First Bank & Trust Co. of Illinois v. Vill. of Orland Hills*, 338 Ill. App. 3d 35, 45 (2003) ("[R]ecitals are only preliminary in nature and will not, of themselves, be considered binding obligations on the parties or an effective part of their agreement unless referred to in the operative portion of their agreement"). Irrespective of Victory's inaccurate recital in the 2013 agreement, Kalnoky is not a party, in his individual capacity, to the 2002 Recording Agreement.

### III.     Conclusion.

For the foregoing reasons, Kalnoky respectfully requests that the Court dismiss Counts II, III, and IV of the Complaint filed by Victory.

Respectfully submitted,

/s Will Parsons
Will Parsons, TN Bar No. 26519 (admitted *pro hac vice*)
SHACKELFORD BOWEN MCKINLEY & NORTON, LLP
47 Music Square East
Nashville, TN 37203
T: (615) 329-4440
wparsons@shackelfordlaw.net

Vangelis Economou, IL Bar No. 6185336
ECONOMOU IP LAW
315 South Plymouth Court, Suite 1110
Chicago, IL 60604
T: (847) 644-3500
Van@EconomouIP.com

*Attorneys for Defendants*

---

(the solo artist). Victory recognizes this difference in referring to Streetlight Manifesto as "the band" and Toh Kay as "[Kalnoky's] solo pseudonym." (Dkt. No. 1, Compl. ¶¶ 10, 41).

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been filed using the Court's Electronic Filing System on this the 25th day of March 2016, and will be served through that System on all attorneys who have entered an appearance in this case, including:

Robert Meloni
Thomas McCaffrey
Meloni & McCaffrey, P.C.
3 Columbus Circle, 15th Floor
New York, New York 10019

Chris Heintskill
Levenfeld & Pearlstein, LLC
2 N. LaSalle St. Suite 1300
Chicago, Illinois  60602


/s Will Parsons