Larkin v. Polygram Records, Inc., Not Reported in F.Supp. (1986)

1986 WL 6174

1986 WL 6174
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Chris LARKIN, Plaintiff,
v.
POLYGRAM RECORDS, INC., Charles Hanson and Alice Cohen, Defendants.

No. 86 Civ. 1128 (RWS).
|
May 23, 1986.

**Attorneys and Law Firms**

Jules D. Zalon, New York City, for plaintiff.

Milgrim, Thomajan, Jacobs & Lee, P.C., New York City, for defendant Polygram Records, Inc.; Charles B. Ortner, Griffith B. Price, Jr., Steven H. Hartman, of counsel.

OPINION

SWEET, District Judge.

 **\*1** Defendant Polygram Records, Inc. ("Polygram") and co-defendants Alice Cohen ("Cohen") and Charles Hanson ("Hanson") have moved for summary judgment under Fed.R.Civ.P. 56 dismissing the first two counts of plaintiff Chris Larkin's ("Larkin") amended complaint, and have moved for dismissal of the remaining five claims of the amended complaint, four on the grounds of lack of subject matter jurisdiction, and one for mootness. For the reasons set forth below, the defendants are entitled to summary judgment on Larkins' first two claims and the remaining claims are dismissed.

*Prior Proceedings*
On February 11, 1986, counsel for Larkin moved, by order to show cause, for expedited discovery in this action, which was granted by the Honorable Constance Baker Motley on February 13, 1986. In response to this expedited discovery, defendant Polygram brought this motion, also by order to show cause, for an order staying discovery and granting summary judgment in its favor, returnable February 28, 1986 which was finally submitted on March 3, 1986. Although it was suggested that a resolution by mutual accord might be forthcoming, none such has resulted.

*Facts*
The facts surrounding this dispute are largely uncontested. In February, 1981, Cohen, Hanson and Larkin formed a musical performing group known as "The Vels," a name apparently taken from a painting of an old soap box. On October 31, 1983, Cohen, Hanson and Larkin, as principals of Insoco Productions, Inc. ("Insoco") entered into a written agreement (the "Agreement") or recording contract with Polygram which Cohen, Hanson and Larkin signed individually and as principals of Insoco. Pursuant to this agreement, Polygram released a long-playing record album (the "First Album") and single record by The Vels in August, 1984, and each group member wrote and performed all compositions on these records.

In early January, 1985, Cohen and Hanson refused to continue rehearsing or performing with Larkin, and essentially expelled him from membership in the group, prompting Larkin to institute the present action. Amidst this fractioning of the group, Polygram, in connection with the distribution of the First Album, produced a music video which reproduced the musical performances of all three singers on the audio portion but which featured only Cohen and Hanson as performers. Cohen and Hanson also began work on a second long-playing record album (the "Second Album") which, as of the February 28, 1986 hearing of this motion, had a projected release date of March 10, 1986.

Counsel for Larkin wrote to Polygram on January 14, 1985 with respect to Polygram's impending release of the music video in which only Cohen and Hanson appear, stating that Larkin's absence from the video was a "false representation" and that Larkin was prepared to institute an action against Polygram to enjoin its use of the music video. On February 6, 1985, Polygram sent a courtesy copy of the video recording to Larkin's counsel and heard nothing further from Larkin's counsel.

 **\*2** Larkin's amended complaint contains seven counts for relief. The first two counts, which are the subject of this motion, allege that Polygram's use of the group name "The Vels" in association with the music video and the Second Album violates section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which prohibits false designation of origin or false descriptions of goods. Counts Three through Six state claims based upon the purported breach of the Insoco joint venture agreement, including claims of breach of fiduciary duty, dissolution of the joint venture, tortious interference

Larkin v. Polygram Records, Inc., Not Reported in F.Supp. (1986)

1986 WL 6174

with the joint venture agreement by Polygram and a request for an accounting. The seventh claim, added by the amended complaint, alleges a third Lanham Act violation pursuant to 15 U.S.C. § 1125(a) based on Larkin's assertion that the upcoming Second Album wrongly identifies Cohen and Hanson as the composers of the music on the album. This claim is, however, moot, as the parties have agreed either to settle the authorship of the compositions among themselves, or to eliminate all credit for authorship on the album.

*Discussion*

The Second Circuit imposes a heavy burden on parties who seek summary judgment, in recognition of the fact that summary judgment deprives the non-moving party of the opportunity for a full factual development of the record through trial, *see Jaroslawicz v. Seedman,* 528 F.2d 727, 731 (2d Cir.1975). A motion for summary judgment may not be granted "unless the entire record shows a right to judgment with such clarity as to leave no room for controversy, and establishes affirmatively that the adverse party cannot prevail under any circumstances. *Heyman v. Commerce and Industry Ins. Co.,* 524 F.2d 1317, 1319–1320 (2d Cir.1975). This standard is strictly construed, *Rodrigues v. Village of Larchmont, N.Y.,* 608 F.Supp. 467, 471 (S.D.N.Y.1985), and all inferences are drawn in favor of the party opposing the motion. *United States v. Diebold Inc.,* 369 U.S. 654, 655 (1962) (*per curiam* ).

A review of the Agreement between Polygram and Insoco reveals that Polygram has met this high burden by demonstrating that Larkin cannot prevail on his trademark infringement claims as a matter of law, as the Agreement explicitly authorizes Polygram to use the name "The Vels" in the manner challenged here.

The Agreement provides in section 5.04 that:

> [Polygram] shall have the perpetual right, without any liability to any person, to use and to authorize other persons to use ... the names (including any professional names or sobriquets) ... relating to the Artist [defined in ¶ 2.01 to include Cohen, Hanson, Larkin and The Vels, collectively and individually] and any producer for the purposes of advertising, promotion and trade in connection with other merchandising

> of any kind ... [Insoco] warrants and represents that [Insoco] owns exclusive rights to use such names ... and that the use of same will not infringe upon the rights of any person.

Insoco thereby warranted that it had the exclusive right to the professional name of the group, and that it granted such an exclusive right to use the name to Polygram for all records (including videos, ¶ 13.02) produced and distributed pursuant to the Agreement.

**\*3** The Agreement further protects Polygram from any changes in the composition of the group by providing that Polygram can select among several options in the event that the group disbands partially or completely during the life of the recording contract. Sections 15.01–15.05, at the heart of the instant controversy, provides in relevant part:

> (a) To terminate this agreement with respect to any leaving member (failure to send such notice being deemed [Polygram's] exercise of its rights to so terminate) ....

These termination provisions provide that the professional name of the group remains the property of Insoco and the non-terminated members of the group, [Agreement ¶ 15.03] and that neither the Artist nor Insoco can permit use of its professional name without Polygram's consent [Agreement ¶ 15.05]. The exhibits annexed to Polygram's order to show cause establish that Insoco by its principals Hanson and Cohen gave written notice to Polygram pursuant to paragraph 15.01 that Larkin was a "leaving member" of The Vels, on February 14, 1986, and that Polygram exercised its option under paragraph 15.01(a) to terminate the Agreement with respect to Larkin on February 18, 1986.

Larkin contends, however, that he is not a "leaving member" of the group within the meaning of these sections because the terms of paragraph 15.01 contemplate someone who refuses, neglects, fails to perform or leaves the group, and not someone who concededly was "forced" out of his position with the group. Such a reading of the Agreement ignores both the purpose of these termination clauses and the definitional clauses of the Agreement.

The language of section 15.01 reveals that the clauses were meant to protect Polygram from any change in group composition, regardless of its precipitating events. Section

Larkin v. Polygram Records, Inc., Not Reported in F.Supp. (1986)

1986 WL 6174

15.01 explicitly states "(The term 'leaving member' shall hereinafter be used to define each individual who leaves the group *or no longer performs with the group,* or each member of the group if the group disbands.)" (emphasis added). Contrary to Larkin's assertion that this language is merely used to "identify a party," this portion of section 15.01 labels itself as defining the term "leaving member." In addition, a reading of sections 15.01–15.05 which deprives Polygram of its contractual right exclusively to use the professional name "The Vels" in connection with the Agreement distorts the purpose of the termination provision, as reflected by the provisions themselves. Pursuant to the terms of section 15.01, Polygram could have terminated the Agreement with respect to each or all members of the group in the event that Insoco notified Polygram of a single "leaving member":

15.01 ... [Polygram] shall have the right to be exercised within two (2) months following its receipt of [Insoco's] notice:

(d) to treat all the members of the artist as leaving members, and have the right to exercise its rights with respect to each in accordance with this article 15 (failure to send such notice being deemed [Polygram's] decision not to so treat the remaining members of the artist as leaving members).

**\*4** In short, Polygram contracted with Insoco to use the professional group name in connection with any constellation of artists whom it chose not to terminate in the event that a "leaving member" letter signaled the change in group composition. Indeed, Polygram even reserved the right to approve of the substitute performers selected to replace a leaving member (Agreement ¶ 15.03).

Larkin's attorney recognized as much when he surmised in his March 3, 1986 letter that Hanson and Cohen agreed not to send a "leaving member" letter because of the "very real fear that Polygram would respond to any such notice by exercising its rights under paragraph 15.01(d) to 'treat all the members of the artist as leaving members,' and then resign only Alice Cohen under paragraph 15.04." These termination provisions thus express that a "leaving member" need not be a performer who chooses not to perform with the group, but can be, as the contract provides, a member who "no longer performs with the group" or a performer whom Polygram chooses to treat as a "leaving member" in the event of a shift in group allignment. These provisions demonstrate that under the Agreement, the group members, and not Polygram, bear the risk of internal

conflict, as Polygram's rights to realign the group are granted in the most sweeping of contractual terms.

Larkin also contends that the Agreement is suspect, as Insoco was not incorporated until one month after the signing of the Agreement. This argument is unpersuasive in light of the signature of the three principals, Larkin, Cohen and Hanson, on the Agreement, as they are bound by the warranties of the document, including the granting of the rights in the group name, regardless of their observance of the corporate formalities.

While Larkin may have claims against Hanson and Cohen for their failure to adopt the "leaving member" letter pursuant to notice and voting procedures presumably required by Insoco's corporate charter, these internal disputes do not alter Polygram's "perpetual right, without any liability to any person, to use and to authorize other persons to use ... the names (including any professional names or sobriquets), ... relating to artist ...." (Agreement ¶ 5.04). Insoco granted Polygram the right to use the name The Vels in connection with the records produced under the Agreement, an agreement which specifically provides for the application of the group name to artists other than the original three group members. Larkin's cause of action for trademark infringement is precluded by his consent as principal of Insoco and signatory to the Agreement. *Franchised Stores of New York, Inc. v. Winter,* 394 F.2d 664, 668 (2d Cir.1968); *Bowmar Instrument Corp. v. Continental Microsystems, Inc.,* 497 F.Supp. 947 (S.D.N.Y.1980).

Larkin contends, however, that Polygram's use of the group name The Vels in connection with a different group of performers constitutes a false designation of origin or false description" in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). According to Larkin, a record produced under the group name, but with only the performances of Cohen and Hanson, would mislead the public into believing that they were purchasing recordings by the original three group members.

**\*5** While there is general authority for the proposition that in rare instances contracts with respect to the use of trademarks will not be enforced if they injure the consuming public by engendering confusion as to the source of origin of the product, *T & T Manufacturing Co. v. A.T. Cross Co.,* 449 F.Supp. 813, 826 (D.R.I.), *aff'd.* 587 F.2d 533 (1st Cir.1978), *cert. denied,* 441 U.S. 908 (1979); *Peyrat v. L.N. Renault & Sons, Inc.,* 247 F.Supp. 1009 (S.D.N.Y.1965), the cases which

1986 WL 6174

Larkin cites to invoke that concept, as well as the provisions of the Agreement with Polygram, undermine its use in these circumstances. Larkin cites *Kingsmen v. K-Tel International Limited,* 557 F.Supp. 178 (S.D.N.Y.1983) for the proposition that Polygram cannot affix the name The Vels to a different set of performers because the group sound is "known in the public consciousness" to comprise the voices of Larkin, Cohen and Hanson. However, the *Kingsmen* involved a single member of a five-member group who had re-recorded a hit from the 1960s. Only one of the five original group members had signed a contract authorizing the defendant to market the record, and the court found that the lone singer had made no representation that he was authorized to use or sell the name Kingsmen. In addition, the album in question explicitly represented to the public that "These selections are re-recordings by the original artists." *Id.* at 180. This is in contrast to the case at bar, where all the group members and Insoco signed a contract with Polygram which warranted their ownership of the name The Vels, authorized the company to use the name despite a changing constellation of performers and induced Polygram to invest in the production, promotion and distribution of the albums and music video.

In *Gilliam v. American Broadcasting Companies, Inc.,* 538 F.2d 14 (2d Cir.1976), the only other case which is cited to support this infringement argument, the Second Circuit enjoined defendants' airing of a television broadcast which edited out twenty-four out of the original ninety minutes of plaintiff's script, holding that plaintiff's state a valid section 43(a) claim that defendants editing had deformed the work and presented it to the public representing that it was the plaintiff's work. *Id.* at p. 24. However, as in *Kingsmen,* the *Gilliam* plaintiff (a script writer) had given no consent for the editing of that script or any other, and

had reserved exclusive authority over script revisions. In contrast, the Insoco-Polygram Agreement presents a case of legitimate, contractually induced reliance on unambiguous contract terms which granted Polygram the right to use the name The Vels in connection with recordings produced under the terms of the Agreement, including the "leaving member" terms. *See Bell v. Streetwise Records, Ltd.,* 761 F.2d 67 (1st Cir.1985) (members of singing group cannot sue record company for false description under section 43(a) where members signed contracts granting the record company the option to couple each performer with fellow "Artists" and to use the group name in connection with these recordings).

**\*6** In short, there are no material disputed issues of fact outstanding, and Polygram is entitled to summary judgment in its favor on the Lanham Act claims, as it was duly authorized to terminate the contract with respect to Larkin, the "leaving member," and to continue to use the name The Vels in connection with the remaining members of the group. As no independent basis exists for retaining jurisdiction over the common law claims arising from the purported breach of the joint venture agreement, claims three through six of the complaint are also dismissed, *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726 (1966); *Nolan v. Meyer,* 520 F.2d 1276, 1280 (2d Cir.), *cert. denied,* 423 U.S. 1034 (1975), and Count Seven is moot by virtue of the agreement of the parties.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1986 WL 6174

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.