UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VICTORY RECORDS, INC., <br><br> Plaintiff, <br><br> v. <br><br> TOMAS KALNOKY, individually and doing business as STREETLIGHT MANIFESTO, <br><br> Defendant. | No. 15 C 9180 <br> Judge James B. Zagel |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Tomas Kalnoky's Motion to Dismiss Counts II, III, and IV of the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6).[1] For the following reasons, Kalnoky's Motion is denied.

**I. BACKGROUND**

Plaintiff Victory Records ("Plaintiff" or "Victory") is an Illinois-based independent record company. In 1997, Victory entered into a merchandising and recording artist agreement with Tomas Kalnoky ("Defendant" or "Kalnoky") and several other musicians, then known as the band "Catch 22." In 2002, Kalnoky and some of the band members from Catch 22 formed a new band known as "Streetlight Manifesto" ("SLM"), with six original members—Kalnoky, Joshua David Ansley, Jamie Patrick Egan, Daniel Joseph Ross, Peter Anthony Sibilia, and Paul Edward Lowndes. Kalnoky functions as the lead singer and songwriter for SLM, as well as the bandleader. Today, he is the only original member remaining in SLM.

On December 4, 2002, SLM and Victory entered into an exclusive merchandising and recording artist agreement ("the 2002 Agreement") signed by all six original members on behalf

---

[1] To the extent that Counts I and V have been asserted against Kalnoky individually and not Streetlight Manifesto as an entity, Defendant moves to dismiss those Counts as well.

1

of SLM. In relevant part, the 2002 Agreement stated:

> If any individual comprising Artist refuses, neglects or fails to perform together with the other individuals comprising Artist in fulfillment of the obligation agreed to be performed under this agreement or leaves the Group, you shall give Company written notice thereof. Said individual shall remain bound by this agreement . . . . the individual whose engagement is so terminated or who refuses, neglects or fails to perform with the Group or who leaves the group may not perform for others for the purposes of recording any Composition as to which the applicable Re-Recording Restrictions has not yet expired . . . . Each person added to Artist, as a replacement or otherwise, shall become bound by the terms and conditions of this agreement . . . .

Furthermore, the 2002 Agreement provides that Victory has an irrevocable option to enter into an exclusive record making contract with each individual in SLM. Victory may exercise this option by giving individuals written notice within four months of receiving notice that an individual has left the group or failed to perform his duties under the contract. The agreement was amended on February 14, 2013 ("the 2013 Amendment"). Tomas Kalnoky is the only party and signatory to the 2013 Amendment, as by that time he was the only remaining original member of SLM—all other signatories to the 2002 Agreement had left SLM.

Other operative provisions of the 2002 Agreement include a "recording commitment" of four studio albums and a prohibition on re-recordings of "Controlled Compositions"[2] over a specified period of time on the part of SLM. The 2002 Agreement also stipulates that Victory owns sound recording copyrights in all SLM sound recordings and has an irrevocable license under copyright to reproduce each controlled composition. Plaintiff contends that SLM has delivered three of these albums, the last in 2013, but has refused to deliver the final album.

From 2010 until 2014, it is undisputed that Kalnoky pursued the following projects under his solo moniker, "Toh Kay." In 2010, Kalnoky released *You By Me, Vol. 1*, distributed by Kalnoky's own company Penimento Music. Kalnoky contributed five songs. In 2011, he released

---

[2] According to Plaintiffs, a controlled composition "is a musical composition written or owned by a band member."

2

*Streetlight Lullabies*, including ten sound recordings by Kalnoky. The same year, he released a vinyl record titled *We Will Fall Together,* containing one song by Kalnoky. In 2013, Kalnoky recorded an acoustic version of the same compositions from Victory's SLM album *Hands that Thieve*. The Toh Kay acoustic album was called *The Hand that Thieves* and contained identical artwork and track listings as Victory's SLM album. Finally, Kalnoky released an EP record, *You By Me, Vol. 2*, including three of Kalnoky's sound recordings.

Victory asserts that Kalnoky is individually bound by the 2002 Agreement and therefore Victory owns all of the Toh Kay songs under the 2002 Agreement. Victory contends that Kalnoky breached the 2002 Agreement's exclusivity provisions by self-releasing five Toh Kay albums while still bound by the 2002 Agreement. Furthermore, Victory argues *The Hand That Thieves* acoustic album violates the re-recording provision of the 2002 Agreement. Finally, Victory maintains *The Hand that Thieves* and *You By Me, Vol. 2* are copyright infringements because Kalnoky relinquished to Victory the copyrights to any solo recordings he made during the term of the 2002 Agreement.

## II. LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) does not test the merits of a claim, but rather the sufficiency of the complaint. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). In deciding a 12(b)(6) motion, the court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the plaintiff. *Id.* at 1521. To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). In addition to the complaint, a court may also consider documents attached to or referenced in the complaint. *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir.1998) (quoting *Wright v. Associated Ins. Cos.,*

*Inc.*, 29 F.3d 1244, 1249 (7th Cir.1994)). "A complaint should not be dismissed for failure to state [a] claim unless it appears beyond doubt that the plaintiff is unable to prove any set of facts which would entitle the plaintiff to relief." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 546 (2007).

**III. DISCUSSION**

Kalnoky argues that Plaintiff's claims should be dismissed because the 2002 Agreement does not bind him individually but only in his capacity as a member of SLM. Therefore, Kalnoky argues, his activities as a solo artist do not constitute a breach of the 2002 Agreement or copyright infringement.

When evaluating a contract dispute, the court applies the "four corners rule" to determine whether the contract is ambiguous on its face. *Williams v. Tucker*, 2013 WL 3287120, *3 (citing *Hillenbrand v. Meyer Medical Group, S.C.*, 288 Ill. App. 3d 871, 875-76, 224 Ill. Dec. 540, 682 N.E.2d 101) (1st Dist. 1997) (*citing Lease Mgmt. Equip. Corp. v. DFO Partnership*, 392 Ill.App.3d 678, 685, 331 Ill. Dec. 300, 910 N.E.2d 709 (1st Dist.2009)). Courts seek to construe the contract as a whole, "giving effect . . . to all contractual provisions . . . according to its plain, ordinary popular meaning," *O'Rourke v. Access Health, Inc.*, 282 Ill.App.3d 394, 218 Ill.Dec. 51, 57, 668 N.E.2d 214, 220 (1996) (internal citations omitted). If the contract is unambiguous, the complaint will survive a motion to dismiss as long as it does not contradict the contract. *See Nathan v. Morgan Stanley Renewable Dev. Fund, LLC*, No. 11 C 2231, 2012 WL 1886440, * 12 (N.D. Ill. May 22, 2012). Where the contract is ambiguous, "the language is a question of fact which a [court] cannot properly determine on a motion to dismiss." *Quake Constr., Inc. v. Am. Airlines, Inc.*, 565 N.E.2d 990, 994, 141 Ill.2d 281, 152 Ill.Dec. 308 (1990).

I find that the 2013 Amendment is unambiguous and does not contradict the complaint. However, paragraphs 21(a) and 21(b) of the original 2002 Agreement are ambiguous, as discussed below. Because the complaint is consistent with the contract and presents a viable claim to the extent it relies on the 2013 Amendment, and because the ambiguous terms of the 2002 Agreement are not properly decided at this time, Defendant's Motion to Dismiss must fail.

**a. The 2013 Amendment**

Plaintiff properly pleaded its allegation regarding the 2013 Amendment. Specifically, Plaintiff claims the 2013 Amendment establishes that Kalnoky the individual is equivalent to SLM the group for purposes of the amended contract. As the complaint notes, the 2013 Amendment identifies Kalnoky as "Tomas Kalnoky, professionally known as 'Streetlight Manifesto'" and Kalnoky was the sole signatory to the Amendment. Thus, Victory properly factually alleged that the 2013 Amendment binds Kalnoky individually.

Kalnoky argues that Victory mischaracterizes the 2013 Amendment, because the Amendment lacks a provision that affirmatively substitutes Kalnoky as an individual for SLM the group. Absent any such provision, Kalnoky claims the underlying 2002 Agreement remains between Victory and SLM. But the 2013 Amendment is unambiguous. It states clearly that any references to SLM in the Agreement connote Kalnoky individually. Thus, for the purposes of the motion to dismiss, the complaint and the 2013 Amendment are not contradictory.

Moreover, Victory successfully states a claim for which relief can be granted. If Kalnoky is individually bound by the 2002 Agreement via the 2013 Amendment, his activities from 2011-2015 amount to a breach of the exclusivity and copyright provisions since he did not obtain express authorization from Victory to contribute songs and release those albums under his own label.

The question of whether the 2002 Agreement and 2013 Amendment may be inapplicable to Kalnoky when he performs as "Toh Kay" is ambiguous and fact-dependent. Kalnoky claims he only performs as a solo artist under this moniker, while SLM has always been a name in reference to a band. However, Kalnoky is currently the only member of SLM and the only SLM signatory to the 2013 Amendment. Whether SLM is now the equivalent of Toh Kay (and whether both are equivalent to Tomas Kalnoky) is unclear. As such, it cannot be resolved in a 12(b)(6) motion. *Quake Constr., Inc.*, 565 N.E.2d at 994.

**b. Paragraph 21(a) of the 2002 Agreement**

Even if Victory's claims regarding the 2013 Amendment were improperly pleaded—which they were not—Kalnoky's argument that the 2002 Agreement is unambiguously an agreement between Victory and SLM alone fails. Kalnoky asserts that because the Preamble and signatory section of the 2002 Agreement defines "you" and "artist" as SLM, he cannot be individually bound. Kalnoky compares his case to *Williams v. Mercury Recording Corp.*, 295 F.2d 284 (7th Cir. 1961), where a record company unsuccessfully attempted to exercise an exclusive recording agreement over an individual band member when the contract defined the "artist parties" to the contract as the collection of individuals that made up the group. Finally, in response to Plaintiff's argument that Kalnoky was individually bound from the outset, Defendant argues that Victory's reading would render paragraph 21(b) superfluous.

However, taking all reasonable inferences in the light most favorable to the Plaintiff, Victory sufficiently pleads that the 2002 Agreement applies to the individuals of the SLM group, even without the 2013 Amendment. First, Victory argues that the plain, ordinary meaning of the text of paragraph 21(a) binds individual members. It points to several phrases including language

6

that states that members who leave the group or fail to perform as individuals "shall remain bound," implying that they are already bound; a section stating that "the individual" is still obligated by the Re-Recording Restrictions; and a section stating that individuals added to SLM "as a replacement or otherwise" are bound to the agreement, implying that the agreement is intended to bind all members of SLM. While Kalnoky points out that the 2002 Agreement lacks an explicit provision that binds SLM members individually, the absence of an individual provision is irrelevant when the same effect is, as Plaintiffs plausibly argue, achieved throughout the instrument. Victory also adequately distinguishes the case at bar from *Williams*, arguing that the recording agreement in *Williams* contained no provisions similar to paragraph 21(a) and 21(b), which expressly bind individuals and give the recording company an option to sign individuals that leave the group.

Moreover, Victory's interpretation does not necessarily leave paragraph 21(b) superfluous. Paragraph 21(a) binds individuals from the outset, while paragraph 21(b) specifies that in the event that a member leaves, the individual may remain bound in a new agreement if Victory exercises its option. In short, paragraph 21(a) binds individuals under the 2002 Agreement while paragraph 21(b) binds individuals under a new agreement when certain conditions are met. Since there is more than one reasonable interpretation, this ambiguity cannot be resolved by this Court in a motion to dismiss.

**c. Paragraph 21(b)**

Courts do not consider facts outside of the pleadings when considering a 12(b)(6) motion to dismiss. *See Kinney v. Dominick's Finer Foods, Inc.*, 780 F. Supp. 1178, 1181 (N.D. Ill. 1991) (citing *Yeksigian v. Nappi*, 900 F.2d 101 (7th Cir.1990)). Defendant Kalnoky argues that even if he is bound individually, either by the 2013 Amendment or the original 2002

7

Agreement, he has not breached the contract or infringed copyright. Kalnoky insists that he did not refuse, neglect or fail to perform with SLM as set forth by the 2002 Agreement, and that because he remains an active member of SLM, Victory cannot exercise its written option to acquire his individual services. However, in making this argument in his motion to dismiss, Kalnoky asks this court to consider facts outside of the pleadings—Kalnoky's assertion that he never refused, neglected, or failed to perform with SLM. This is not an appropriate inquiry for a motion to dismiss and thus, this argument fails at this time. *Id.* at 1182.

## IV. CONCLUSION

For the foregoing reasons, Defendant Tomas Kalnoky's Motion to Dismiss Counts II, III, and IV is denied.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: June 8, 2016