## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **VICTORY RECORDS, INC.,** | ) | |
| | ) | **Civil Action No. 1:15-cv-09180** |
| **Plaintiff/Counter-Defendant,** | ) | |
| | ) | **JURY DEMAND** |
| | ) | |
| **v.** | ) | **JUDGE ZAGEL** |
| | ) | |
| **TOMAS KALNOKY, individually and doing** | ) | |
| **business as STREETLIGHT MANIFESTO,** | ) | |
| | ) | |
| **Defendant/Counter-Plaintiff.** | ) | |

## DEFENDANT'S ANSWER AND COUNTERCLAIM

Defendant Tomas Kalnoky, individually and doing business as Streetlight Manifesto ("Defendant"),[1] hereby files this Answer to the Complaint of Victory Records, Inc. ("Victory") and states as follows:

## FIRST DEFENSE

Victory fails to state a claim upon which relief can be granted.

## SECOND DEFENSE
### (Answers in response to numbered paragraphs)

1. Defendant admits the allegations in Paragraph 1 of the Complaint.

2. Defendant admits the allegations in the first sentence of Paragraph 2 of the Complaint. Defendant denies the allegations in the second sentence of Paragraph 2 of the Complaint.

3. Defendant admits the allegations in Paragraph 3 of the Complaint.

4-5. Defendant admits the allegations in Paragraphs 4 and 5 of the Complaint.

---

[1] For the reasons set forth herein and in his previously-filed Motion to Dismiss, Kalnoky disputes that he is properly named as a party to this action and that he, individually, is equivalent to the band, Streetlight Manifesto.

6.      In response to the allegations in Paragraph 6 of the Complaint, Defendant avers that the referenced document speaks for itself.

7.      Defendant denies the allegations in Paragraph 7 of the Complaint.

8.      In response to the allegations in Paragraph 8 of the Complaint, Defendant avers that the referenced document speaks for itself.

9.      Defendant admits the allegations in Paragraph 9 of the Complaint.

10.     Defendant denies the allegations in Paragraph 10 of the Complaint.

11-16.  Defendant admits the allegations in Paragraphs 11 through 16 of the Complaint.

17-18.  Defendant admits the allegations in Paragraphs 17 and 18 of the Complaint.

19-21.  Defendant admits the allegations in Paragraphs 19 through 21 of the Complaint.

22-24.  In response to the allegations in Paragraphs 22 through 24 of the Complaint, Defendant avers that the referenced document speaks for itself.

25-26.  Defendant admits the allegations in Paragraphs 25 and 26 of the Complaint.

27.     In response to the allegations in Paragraph 27 of the Complaint, Defendant avers that the referenced document speaks for itself.

28.     Defendant denies the allegations in Paragraph 28 of the Complaint.

29-30.  Defendant denies the allegations in Paragraphs 29 and 30 of the Complaint.

31.     In response to the allegations in Paragraph 31 of the Complaint, Defendant avers that the referenced documents speak for themselves.

32.     Defendant denies the allegations in Paragraph 32 of the Complaint.

33-35.  Defendant admits the allegations in Paragraphs 33 through 35 of the Complaint.

36.     Defendant denies the allegations in the first sentence of Paragraph 36 of the Complaint.  Defendant admits the allegations in the second, third, and fourth sentences of

Paragraph 36 of the Complaint. Defendant denies the allegations in the fifth sentence of Paragraph 36 of the Complaint

37.     Defendant denies the allegations in the first sentence of Paragraph 37 of the Complaint. Defendant admits the allegations in the second and third sentences of Paragraph 37 of the Complaint. Defendant denies the allegations in the fourth sentence of Paragraph 37 of the Complaint.

38.     Defendant denies the allegations in the first sentence of Paragraph 38 of the Complaint. Defendant admits the allegations in the second and third sentences of Paragraph 38 of the Complaint. Defendant denies the allegations in the fourth sentence of Paragraph 38 of the Complaint.

39.     Defendant denies the allegations in the first sentence of Paragraph 39 of the Complaint. Defendant admits the allegations in the second and third sentences of Paragraph 39 of the Complaint. Defendant denies the allegations in the fourth sentence of Paragraph 39 of the Complaint.

40-41.  Defendant denies the allegations in Paragraphs 40 and 41 of the Complaint.

42.     Defendant admits the allegations in Paragraph 42 of the Complaint.

43-44.  Defendant denies the allegations in Paragraphs 43 and 44 of the Complaint.

45-46.  Defendant admits the allegations in Paragraph 45 and 46 of the Complaint.

47.     Defendant denies the allegations in Paragraph 47 of the Complaint.

48.     Defendant incorporates its responses to the allegations in Paragraphs 1 through 47 of the Complaint.

49-54.  Defendant denies the allegations in Paragraphs 49 through 54 of the Complaint.

55.     Defendant incorporates its responses to the allegations in Paragraphs 1 through 54 of the Complaint.

56.     Defendant denies the allegations in Paragraph 56 of the Complaint.

57.     In response to the allegations in Paragraph 57 of the Complaint, Defendant avers that the referenced document speaks for itself.

58.     The allegations in Paragraph 58 of the Complaint constitute legal conclusions to which no response is required.   To the extent a response is required, Defendant denies the allegations in Paragraph 58 of the Complaint.

59-61.  Defendant denies the allegations in Paragraphs 59 through 61 of the Complaint.

62.     Defendant incorporates its responses to the allegations in Paragraphs 1 through 61 of the Complaint.

63.     Defendant denies the allegations in Paragraph 63 of the Complaint.

64.     Defendant admits the allegations in Paragraph 64 of the Complaint.

65-66.  In response to the allegations in Paragraphs 65 and 66 of the Complaint, Defendant avers that the referenced document speaks for itself.

67.     The allegation in Paragraph 67 of the Complaint is a legal conclusions to which no response is required.   To the extent a response is required, Defendant denies the allegation in Paragraph 67 of the Complaint.

68-69.  Defendant denies the allegations in Paragraphs 68 and 69 of the Complaint.

70.     Defendants lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 70 of the Complaint.

71-76.  Defendant denies the allegations in Paragraphs 71 through 76 of the Complaint.

77. Defendant incorporates its responses to the allegations in Paragraphs 1 through 76 of the Complaint.

78-79. Defendant admits the allegations in Paragraphs 78 and 79 of the Complaint.

80-81. In response to the allegations in Paragraphs 80 and 81 of the Complaint, Defendant avers that the referenced document speaks for itself.

82. The allegation in Paragraph 82 of the Complaint is a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegation in Paragraph 82 of the Complaint.

83-84. Defendant denies the allegations in Paragraphs 83 and 84 of the Complaint.

85. Defendants lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 85 of the Complaint.

86-91. Defendant denies the allegations in Paragraphs 86 through 91 of the Complaint.

92. Defendant incorporates its responses to the allegations in Paragraphs 1 through 91 of the Complaint.

93. Defendant admits the allegation in Paragraph 93 of the Complaint.

94-95. In response to the allegations in Paragraphs 94 and 95 of the Complaint, Defendant avers that the referenced document speaks for itself.

96-98. Defendant denies the allegations in Paragraphs 96 through 98 of the Complaint.

## **THIRD DEFENSE**

Victory's claims are barred by the doctrine of first material breach.

## **FOURTH DEFENSE**

Victory's claims are barred by the terms of the 2002 Agreement.

### FIFTH DEFENSE

Victory has failed to mitigate its damages.

### SIXTH DEFENSE

Victory's claims are bared in whole or in part by the applicable statutes of limitation or by the doctrine of laches.

### SEVENTH DEFENSE

Victory's claims are bared in whole or in part by the doctrines of estoppel and waiver.

### EIGHTH DEFENSE

Victory's claim for attorney's fees is barred by 17 U.S.C. § 412.

### NINTH DEFENSE

Victory failed to comply with the 2002 Agreement's "notice and cure" provision and, therefore, its breach of contract claims fail.

### TENTH DEFENSE

Victory's breach of contract claim(s) with respect to "The Hand that Thieves" fail because Defendant timely cured the alleged breach(es) upon notice from Victory.

WHEREFORE Defendant prays that Victory's Complaint be dismissed with prejudice and that it be awarded its costs and attorneys' fees incurred in this action. Defendant also prays for such other further and general relief as the Court may deem appropriate.

## COUNTERCLAIM

1.      For its Counterclaim against Victory, Defendant states as follows.

### The Parties

2.      Streetlight Manifesto is a rock band comprised of several members.   Tomas Kalnoky is an individual residing in California.  At all relevant times, Kalnoky has performed as a member of Streetlight Manifesto.  Kalnoky remains a member of Streetlight Manifesto.  Kalnoky has never refused, neglected, or failed to perform together with the other individuals comprising Streetlight Manifesto, nor has Kalnoky ever left the group.  Kalnoky also performs sometimes as a solo artist under the name "Toh Kay."   Victory is a record company headquartered in Chicago.

### The 2002 Agreement

3.      Victory and Streetlight Manifesto are parties to an Exclusive Recording Agreement dated December 4, 2002 (the "2002 Agreement").  The parties to the Recording Agreement are Victory Records, Inc. and Streetlight Manifesto.  The Preamble defines Victory Records, Inc. as "Company" and Streetlight Manifesto as "You."  The Recording Agreement then states that, "You [*i.e.*, Streetlight Manifesto] are sometimes called 'Artist' below; all references in this agreement to you and the Artist and the like shall be understood to refer to you alone."  Read in conjunction with the Preamble – which defines "You" as Streetlight Manifesto – the foregoing provision makes clear that all references to "Artist" in the Recording Agreement "shall be understood to refer to [Streetlight Manifesto] alone."  The individual members of Streetlight Manifesto are not named parties to the Recording Agreement.  The individual members signed the Recording Agreement only on behalf of Streetlight Manifesto.

4.      All of the obligations in the Recording Agreement belong to "Artist" and "You," which, under the terms of the agreement, mean Streetlight Manifesto and not its members in their

individual capacity. Thus, Kalnoky, in his individual capacity, is not obligated to render his services to Victory as a solo artist. Kalnoky, in his individual capacity, did not transfer to Victory any rights in his solo recordings. Kalnoky, in his individual capacity, did not agree to any re-recording restrictions.

5. Pursuant to Section 1 of the 2002 Agreement, Streetlight Manifesto agreed to render its services exclusively to Victory during the term of the agreement. The individual members of Streetlight Manifesto never agreed to render their services (exclusively or otherwise) to Victory (outside of their capacity as members of the group).

6. Pursuant to Section 3 of the 2002 Agreement, Streetlight Manifesto agreed to deliver four "Albums" to Victory.[2] The individual members of Streetlight Manifesto never agreed to record any "Albums" for Victory (outside of their capacity as members of the group).

7. Pursuant to Section 5 of the 2002 Agreement, Streetlight Manifesto and Victory agreed that "[a]ll Masters…embodying Artist's [Streetlight Manifesto's] performances that are made during the Term…shall…be the property of Company in perpetuity…." The individual members of Streetlight Manifesto never transferred to Victory any rights (including copyrights) in their individual recordings.

8. Pursuant to Section 8 of the 2002 Agreement, Victory agreed to pay Streetlight Manifesto certain royalties with respect to its exploitation of Streetlight Manifesto's records.

9. Pursuant to Section 9 of the 2002 Agreement, Victory agreed to send royalty statements to Streetlight Manifesto on or before the September 30th and March 31st for the respective semi-annual period ending the preceding June 30th and December 31st, together with

---

[2] An Album is defined as "One (1) or more audio-only Records, at least forty-five (45) minutes in playing time and embodying at least ten (10) Masters of different compositions sold in a single package."

payment of accrued royalties due to Streetlight Manifesto, if any, on sales and licenses for which Victory received payment by the end of the semiannual accounting period involved.

10.     Pursuant to Section 11 of the 2002 Agreement, Streetlight Manifesto agreed to license to Victory certain rights in compositions written in whole or in part by Streetlight Manifesto.  Victory agreed to pay Streetlight Manifesto certain publishing royalties known as "mechanical royalties" with respect to exploitation of these compositions.  Victory, however, has no ownership interest in the copyrights of compositions written by Streetlight Manifesto or its individual members.  It is not authorized under the 2002 Agreement to collect any publishing income earned from exploitation of compositions written by Streetlight Manifesto (other than mechanical royalties) or its individual members.

11.     Pursuant to Section 15 of the 2002 Agreement, Streetlight Manifesto agreed "not [to] perform any Composition recorded hereunder for anyone other than Company…for a period of [] five (5) years after the initial date of release….or [] two (2) years after the expiration…of the Term…."  This provision applies to the individual members of Streetlight Manifesto only in their capacity as members of the group.

12.     Section 21 of the 2002 Agreement sets forth certain limited circumstances pursuant to which Victory may acquire rights in the exclusive services of an individual member of Streetlight Manifesto (*e.g.*, as a solo artist).  In particular, the Recording Agreement provides that Victory may acquire such rights only if an individual "refuses, neglects or fails" to perform together with the other members of Streetlight Manifesto or "leaves the group" and Victory subsequently exercises a written option for the services of that individual:

> If any individual comprising Artist refuses, neglects or fails to perform together with the other individuals comprising Artist in fulfillment of the obligations agreed to be performed  under this agreement or leaves the Group, you shall give Company

prompt written notice…[and] [s]aid individual shall remain bound by this agreement….

***

Company shall have, and you hereby grant to Company, an irrevocable option for the individual and exclusive services of each of the individual(s) comprising Artist for the purpose of making Records. Said option with respect to such individual(s) may be exercised by Company giving you notice in writing within four (4) months after Company receives the notice provided for in paragraph 21 (a) to the effect that such individual(s) has refused, neglected or failed to perform with the other individuals comprising Artist or that such individual(s) has left the Group or that the Group has disbanded.

13.     In the instant case, Victory has never acquired any rights in Kalnoky individually (*e.g.*, as a solo artist) because Kalnoky has never "refuse[d], neglect[ed] or fail[ed]" to perform as a member of Streetlight Manifesto, nor has he left the group.  To the contrary, at all relevant times, Kalnoky has performed as a member of Streetlight Manifesto and, indeed, he remains a member of Streetlight Manifesto to this day.  Even assuming, *arguendo*, that Kalnoky had "refuse[d], neglect[ed] or fail[ed]" to perform as a member of Streetlight Manifesto or had left the group – and he has not – Victory does not allege that it exercised a written option to Kalnoky's individual services.  The exercise of such a written option is the only means contemplated by the Recording Agreement by which Victory could have acquired rights in Kalnoky's services individually.  Thus, under the terms of the Recording Agreement, Victory never acquired rights to Kalnoky's services as a solo artist.

14.     Pursuant to Section 24 of the 2002 Agreement, the parties agreed as follows: "No breach of this agreement by Company [Victory] or Artist [Streetlight Manifesto] (except for [Streetlight Manifesto's] breach of the exclusivity provisions hereof) shall be deemed material unless notice is given specifying the nature of the breach and the recipient of the notice fails to cure such breach."

10

## Streetlight Manifesto Albums

15.     On or about August 26, 2003, Victory released the Streetlight Manifesto album entitled "Everything Goes Numb."  This album was released pursuant to the 2002 Agreement.  The parties agree that "Everything Goes Numb" constitutes an "Album" in satisfaction of Streetlight Manifesto's 4-Album recording obligation under the 2002 Agreement.

16.     On or about March 7, 2006, Victory released the Streetlight Manifesto album entitled "Keasbey Nights."   Victory contends that this album was released pursuant to an agreement other than the 2002 Agreement, specifically an oral agreement allegedly memorialized by emails in or around late-2005.   Under this agreement (according to Victory), Streetlight Manifesto agreed that "Keasbey Nights" would not constitute an "Album" in satisfaction of its 4-Album recording obligation under the 2002 Agreement.  In exchange, Victory agreed to provide Streetlight Manifesto with certain monetary consideration.  While Streetlight Manifesto admits that the parties discussed such an agreement in or around late-2005, it denies that Victory ever provided the agreed upon monetary consideration.  Alternatively, Streetlight Manifesto asserts that there was no meeting of the minds as to the terms of a final agreement, including, without limitation, the consideration to be provided thereunder.  Under either circumstance, there was no agreement to exclude "Keasbey Nights" from the 2002 Agreement and the effect is that "Keasbey Nights" constitutes an "Album" in satisfaction of Streetlight Manifesto's 4-Album recording obligation under the 2002 Agreement.

17.     On or about November 13, 2007, Victory released the Streetlight Manifesto album entitled "Somewhere in the Between."  This album was released pursuant to the 2002 Agreement. The parties agree that "Somewhere in the Between" constitutes an "Album" in satisfaction of Streetlight Manifesto's 4-Album recording obligation under the 2002 Agreement.

11

18.     On or about March 16, 2010, Victory released the Streetlight Manifesto album entitled "99 Songs of Revolution: Vol. 1."  By written agreement dated May 21, 2008 (the "2008 Agreement"), the parties agreed that "99 Songs of Revolution: Vol. 1" would not constitute an "Album" in satisfaction of Streetlight Manifesto's 4-Album recording obligation under the 2002 Agreement.  Under the 2008 Agreement, Victory agreed that the accounting for "99 Songs of Revolution: Vol. 1" would be "separate and of its own account" and according to specific financial terms set forth in the 2008 Agreement.

19.     On or about April 30, 2013, Victory released the Streetlight Manifesto album entitled "The Hands That Thieve."  This album was released pursuant to the 2002 Agreement and a letter agreement dated February 14, 2013 between Victory and Streetlight Manifesto (the "2013 Agreement").  The 2013 Agreement contains a factually inaccurate recital, which characterizes the 2002 Recording Agreement as "between Victory Records, Inc. [] and Tomas Kalnoky, professionally known as 'Streetlight Manifesto.'"  This recital is inaccurate.  On its face, the 2002 Agreement is between Victory and Streetlight Manifesto – not Victory and "Tomas Kalnoky, professionally known as 'Streetlight Manifesto.'"  There is no reference in the operative portion of the 2013 Agreement to Kalnoky's being substituted, individually, for Streetlight Manifesto under the 2002 Agreement.  The parties agree that "The Hands That Thieve" constitutes an "Album" in satisfaction of Streetlight Manifesto's 4-Album recording obligation under the 2002 Agreement.  Upon release of "The Hands That Thieve," Streetlight Manifesto had satisfied its 4-Album recording obligation under the 2002 Agreement.

**Toh Kay Albums**

20.     During the term of the 2002 Agreement, Kalnoky routinely performed, both through live and recorded music, as a solo artist under the name Toh Kay.  The artistic expression

of Toh Kay is radically different from that of Streetlight Manifesto.  Streetlight Manifesto is a ska punk band that includes numerous musicians playing, among other things, electric guitar, bass guitar, trumpet, trombone, saxophone, and drums.  By contrast, Toh Kay is a solo artist performing in a quiet, folk-style genre, typically playing only acoustic guitar.  The artistic style of Toh Kay is radically different from that of Streetlight Manifesto.

21.     Kalnoky, performing as Toh Kay, has self-released certain solo projects with Victory's knowledge and acquiescence, evidencing Victory's understanding and agreement that Kalnoky, individually, is not bound by the 2002 Agreement.  For instance, on or about November 16, 2010, Kalnoky, performing as a solo artist under the name Toh Kay, released an album with another artist, Dan Potthast, entitled "You By Me: Vol. 1."  This album features Toh Kay's performance of five songs written by Potthast and Potthast's performance of five Streetlight Manifesto songs, all written by Kalnoky.  Kalnoky publicly promoted and acknowledged his involvement with this album.  Upon information and belief, Victory had knowledge of Kalnoky's involvement with this album and did not object.

22.     On or about November 22, 2011, Kalnoky, performing as a solo artist under the name Toh Kay, released an album entitled "Streetlight Lullabies."  This album features Toh Kay's solo acoustic version of 10 Streetlight Manifesto songs, all written by Kalnoky.  Kalnoky publicly promoted and acknowledged his involvement with this album.  Upon information and belief, Victory had knowledge of Kalnoky's involvement with this album and did not object.

23.     On or about November 22, 2011, Kalnoky, performing as a solo artist under the name Toh Kay, released a 7" single record entitled "We Will Fall Together."  Kalnoky publicly promoted and acknowledged his involvement with this album.  Upon information and belief, Victory had knowledge of Kalnoky's involvement with this album and did not object.

13

24.     On or about August 12, 2014, Kalnoky, performing as a solo artist under the name Toh Kay, released an album with another artist, Sycamore Smith, entitled "You By Me: Vol. 2." This album features Toh Kay's performance of three songs written by Smith and Smith's performance of three Streetlight Manifesto songs, all written by Kalnoky. Kalnoky publicly promoted and acknowledged his involvement with this album. Upon information and belief, Victory had knowledge of Kalnoky's involvement with this album and did not object.

### The Hand that Thieves

25.     Kalnoky, performing as a solo artist under the name Toh Kay, intended to release an album entitled "The Hand that Thieves" on or around April 30, 2013 (containing acoustic versions of songs contained on a Streetlight Manifesto album). Shortly before the intended release date, however, Victory wrote Kalnoky contending that his release of this album would constitute a breach of the 2002 Agreement and copyright infringement. Although Kalnoky disputed (and disputes) this contention, he agreed not to release this album out of an abundance of caution and to avoid being forced to incur significant legal fees by Victory's unwarranted objection to the release. As such, Kalnoky cured any alleged breach of contract upon notice from Victory.

### Victory's Failure to Account and Pay Royalties to Streetlight Manifesto

26.     Throughout the parties' relationship, Victory failed to account and pay royalties to Streetlight Manifesto in compliance with the 2002 Agreement and the 2008 Agreement. Among other things, Victory failed to timely provide royalty statements and checks. In addition, upon information and belief, Victory failed to pay royalties at the appropriate rate, collected income to which it was not entitled, and otherwise breached the financial terms of the parties' agreements. In or around 2013, Victory simply stopped sending royalty statements and checks to Streetlight Manifesto.

## Streetlight Manifesto's 2015 Letter to Victory

27.     On September 18, 2015, Streetlight Manifesto, through counsel, wrote to counsel for Victory Records.  Pursuant to Paragraph 24(a) of the 2002 Agreement, Streetlight Manifesto advised Victory that it was in material breach of its obligations under that agreement.

28.     Streetlight Manifesto specifically advised Victory that it was in material breach of the 2002 Agreement because it had failed to provide contractually-mandated royalty statements to Streetlight Manifesto as provided in Paragraph 9(a).  Streetlight Manifesto also advised Victory that it was in material breach of the 2002 Agreement because it had failed to pay royalties to Streetlight Manifesto as provided in Paragraph 9(a).

29.     Pursuant to Paragraph 24(a) of the 2002 Agreement, Streetlight Manifesto advised Victory to cure the foregoing breaches within 30 days.  Streetlight Manifesto advised Victory that its failure to timely cure either of these material breaches would result in termination of the 2002 Agreement.

30.     Victory failed to timely cure the foregoing material breaches within 30 days.  As such, Streetlight Manifesto's obligations to Victory under the 2002 Agreement terminated on or about October 19, 2015 (to the extent they had not already terminated).

## COUNT I
## (Breach of Contract)

31.     Defendant incorporates by reference the allegations set forth in Paragraphs 1 to 30 as if fully set forth herein.

32.     Victory has materially breached the 2002 Agreement and the 2008 Agreement by failing to provide contractually-mandated royalty statements to Streetlight Manifesto as provided in Paragraph 9(a) of the 2002 Agreement (incorporated in the 2008 Agreement).

15

33.     Victory has materially breached the 2002 Agreement by failing to pay royalties to Streetlight Manifesto as provided in Paragraph 9(a) of the 2002 Agreement (incorporated in the 2008 Agreement).

34.     Upon information and belief, Victory has materially breached the 2002 Agreement and 2008 Agreement by failing to pay royalties at the appropriate rate, by collecting income to which it was not entitled, and by otherwise failing to abide by the financial terms of the parties' agreements.

35.     Defendant provided notice to Victory that it was in material breach of the 2002 Agreement as set forth herein and requested that Victory cure these breaches within 30 days. Victory failed to do so.

36.     In or about 1998, Victory entered into a merchandising and recording artist agreement with Kalnoky and several other individuals, then professionally known as the band "Catch 22." Pursuant to this agreement, Victory has an obligation to account for and pay certain royalties to Kalnoky. In or around 2013 – at the same time that Victory stopped providing royalty statements and checks to Streetlight Manifesto – Victory stopped providing royalty statements and royalty checks to Kalnoky under the Catch 22 recording agreement. Victory's failure to provide these royalty statements and checks constitutes a breach of the Catch 22 recording agreement.

37.     Defendant has suffered damages as a result of Victory's breaches.

## COUNT II
### (Declaratory Judgment)

38.     Defendant incorporates by reference the allegations set forth in Paragraphs 1 to 37 as if fully set forth herein.

39.     There is an actual controversy regarding whether Defendant has satisfied its recording obligations to Victory under the 2002 Agreement.

40.     Pursuant to Section 3 of the 2002 Agreement, Defendant agreed to record and deliver four "Albums" to Victory.  Defendant has satisfied this obligation by recording and delivering the following four albums to Victory (all of which Victory released): "Everything Goes Numb" (August 26, 2003); "Keasbey Nights" (March 7, 2006); "Somewhere in the Between" (November 13, 2007); and "The Hands That Thieve" (April 30, 2013).

41.     Accordingly, Defendant seeks this Court's declaration that it has satisfied its 4-Album recording obligation to Victory on or about April 30, 2013, when Victory released the Album entitled "The Hands That Thieve."  Defendant further seeks this Court's declaration that it no longer has any obligations to Victory under the 2002 Agreement and that, among other things, it is no longer bound by that agreement's exclusivity provision.

42.     There is an actual controversy regarding whether the 2002 Agreement terminated upon Victory's failure to timely cure its material breaches upon proper notice from Defendant (to the extent that agreement had not already terminated as a result of Defendant's satisfying its recording obligations thereunder).

43.     Accordingly, Defendant seeks this Court's declaration that, to the extent it had not already terminated, the 2002 Agreement terminated on or about October 19, 2015, when Victory failed to timely cure its material breaches upon proper notice from Defendant.  Defendant further seeks this Court's declaration that it no longer has any obligations to Victory under the 2002 Agreement and that, among other things, it is no longer bound by that agreement's exclusivity provision.

44.     There is an actual controversy regarding whether Kalnoky has any obligations to Victory under the 2002 Agreement outside of his membership in the group Streetlight Manifesto.

45.     Accordingly, Kalnoky seeks this Court's declaration that he does not have any obligations to Victory under the 2002 Agreement outside of his membership in the group Streetlight Manifesto and, in particular, that he is not obligated to render his exclusive services to Victory as a solo artist; that he did not transfer to Victory any rights in his solo recordings; and that he is not bound by any re-recording restrictions in the 2002 Agreement (outside of his capacity as a member of the group).

46.     There is an actual controversy regarding whether Kalnoky transferred to Victory the copyrights in the master recordings embodied on the Toh Kay albums entitled "The Hand that Thieves" and "You By Me: Vol. 2."  Kalnoky, in his individual capacity performing as the solo artist Toh Kay, never transferred to Victory any rights, including the copyrights, in these sound recordings.

47.     Accordingly, Kalnoky seeks this Court's declaration that Victory has no ownership interest in the copyrights for the sound recordings embodied on the albums entitled "The Hand that Thieves" and "You By Me: Vol. 2" and that Kalnoky is an owner of the copyrights in these sound recordings as an author of these works.

## Count III
## (Unjust Enrichment)

48.     Defendant incorporates by reference the allegations set forth in Paragraphs 1 to 47 as if fully set forth herein.

49.     Upon information and belief, Victory has wrongfully collected and retained income that is due and payable to Defendant or Kalnoky individually, including, without limitation, publishing income to which Victory has no rights under the parties' contracts.

50.     As such, Victory has unjustly retained a benefit to Defendant's or Kalnoky's detriment and Victory's retention of this benefit violates the fundamental principles of justice, equity, and good conscience.

WHEREFORE, Defendant prays for the following relief:

a.     Compensatory and other damages pursuant to Victory's breaches of contract as set forth in Count I;

b.     A declaratory judgment as requested in Count II;

c.     Restitution pursuant to Victory's unjust enrichment as set forth in Count III;

d.     Recover of its attorney's fees and costs incurred in this action; and

e.     Such further and general relief as the Court may deem appropriate.

Respectfully submitted,


/s Will Parsons
Will Parsons, TN Bar No. 26519 (admitted *pro hac vice*)
SHACKELFORD BOWEN MCKINLEY & NORTON, LLP
47 Music Square East
Nashville, TN 37203
T: (615) 329-4440
wparsons@shackelfordlaw.net

Vangelis Economou, IL Bar No. 6185336
ECONOMOU IP LAW
315 South Plymouth Court, Suite 1110
Chicago, IL 60604
T: (847) 644-3500
Van@EconomouIP.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing has been filed using the Court's Electronic Filing System on this the 1st day of July 2016, and will be served through that System on all attorneys who have entered an appearance in this case, including:

Robert Meloni
Thomas McCaffrey
Meloni & McCaffrey, P.C.
3 Columbus Circle, 15th Floor
New York, New York 10019

Chris Heintskill
Levenfeld & Pearlstein, LLC
2 N. LaSalle St. Suite 1300
Chicago, Illinois  60602


/s Will Parsons_____