MELONI & McCAFFREY
A Professional Corporation
ROBERT S. MELONI
THOMAS P. MCCAFFREY
3 Columbus Circle, 15th Floor
New York, New York 10019

LEVENFELD PEARLSTEIN, LLC
By: /s/ Christopher M Heintskill (ARDC No. 6272391)
2 North LaSalle, 13th Floor
Chicago, IL 60602

*Attorneys for Plaintiff Victory Records, Inc.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | | |
|---|---|---|
| VICTORY RECORDS, INC., | ) | **Civil Action No. 1:15-CV-09180** |
| | ) | |
| Plaintiff, | ) | **AMENDED COMPLAINT** |
| | ) | **& JURY DEMAND** |
| v. | ) | |
| | ) | |
| TOMAS KALNOKY, individually and | ) | |
| doing business as STREETLIGHT MANIFESTO | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Victory Records, Inc., by and through its undersigned attorneys, as and for its Amended Complaint, alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1.     Victory Records, Inc. (hereinafter "Victory") is an Illinois corporation. Its principal place of business is at 346 N. Justine Street, Chicago, Illinois 60607.

2.     Defendant Streetlight Manifesto (hereinafter "SLM") is an American "ska" band that formed in 2002 in New Brunswick, New Jersey. Upon information and belief, SLM is a business entity of unknown legal status, having a principal place of business in the State of California.

3. Defendant Tomas Kalnoky (hereinafter "Kalnoky") is an individual and domiciliary of the State of California. During the relevant time period, Kalnoky performed as a member of SLM throughout the World, including within the State of Illinois, and including without limitation, the acts complained of herein. Kalnoky has always been and remains the business and creative leader of, and continues to control, SLM, including its name and assets.

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. The citizenship of Victory is fully diverse from that of Defendants Kalnoky and SLM, and the amount in controversy exceeds $75,000, exclusive of interest.

5. This Court has original and exclusive subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1338(a), in that the claims alleged herein concern federal questions which arise under the Copyright Act of 1976, as amended (the "Copyright Act"), 17 U.S.C. §§ 101 et seq.

6. In addition, this Court has exclusive subject matter jurisdiction over Kalnoky and SLM because the governing agreement between the parties herein specifically states "[t]he Federal and State courts in Cook County shall have exclusive jurisdiction of any dispute arising under or concerning this agreement."

7. This Court has personal jurisdiction over Kalnoky and SLM because they conduct business continuously and systematically in Illinois for the purpose of engaging in, *inter alia*, performances and related activities in the State of Illinois pertaining to the sale of sound recordings released under the band name Streetlight Manifesto.

8. In addition, this Court has personal jurisdiction over Kalnoky and SLM because the governing agreement states "[t]his agreement is made in the State of Illinois and its validity, construction and performance shall be governed by the laws of the State of Illinois applicable to

2

agreements made and to be entirely performed in Illinois, without regard to any conflict of laws principles."

9. Venue is proper in this District because a substantial part of the events or omissions giving rise to the claim occurred in this District. Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1400(a).

## SUMMARY OF CASE

10. This case involves an all-too familiar story in the music industry: an unknown musical band from a small-town on the East Coast in America, flies below the music industry radar until it gets its long-shot at success by signing a contract with an independent record company. That company then devotes significant amounts of resources, money, experience, passion, time and effort into promoting and marketing the band with the goal of exposing them to the general public. As a result, this band beats the industry's odds and achieves commercial and critical success. However, sometimes the success of a band brings along with it a host of its own problems. This is what happened with SLM and its mercurial leader, Tomas Kalnoky.

11. At all relevant times, Kalnoky was and remains the primary creative force, band leader and lead singer and songwriter for SLM.

12. Joshua David Ansley (hereinafter "Ansley") is an individual and one-time member of SLM. During the relevant time period, Ansley performed and recorded as a member of SLM throughout the World, including within the State of Illinois.

13. Jamie Patrick Egan (hereinafter "Egan") is an individual and one-time member of SLM. During the relevant time period, Egan performed and recorded as a member of SLM throughout the World, including within the State of Illinois.

14. Daniel Joseph Ross (hereinafter "Ross") is an individual and one-time member of SLM. During the relevant time period, Ross performed and recorded as a member of SLM throughout the World, including within the State of Illinois.

15. Peter Anthony Sibilia (hereinafter "Sibilia") is an individual and one-time member of SLM. During the relevant time period, Sibilia performed and recorded as a member of SLM throughout the World, including within the State of Illinois.

16. Paul Edward Lowndes (hereinafter "Lowndes") is an individual and one-time member of SLM. During the relevant time period, Lowndes performed and recorded as a member of SLM throughout the World, including within the State of Illinois.

17. Upon information and belief, Ansley, Egan, Ross, Sibilia and Lowndes are no longer members of SLM.

18. Kalnoky now remains as the only original member, and founder, of SLM.

19. In or about 1998, Victory entered into a merchandising and recording artist agreement with Kalnoky, Ansley, Egan and others, then professionally known as the band "Catch 22" (the "Catch 22 Agreement"). Catch 22's debut album entitled "Keasbey Nights" was released by Victory in 1998 (the original "Keasbey Nights Album").

20. By 2002, Kalnoky, Ansley and Egan were joined by Ross, Sibilia and Lowndes and the group formed a new band, Defendant SLM.

21. On December 4, 2002, SLM and Victory entered into an exclusive merchandising and recording artist agreement, which was amended on February 14, 2013 (the "2002 Agreement"). Kalnoky, Ansley, Egan, Ross, Sibilia and Lowndes signed the 2002 Agreement on behalf of SLM.

22. The 2002 Agreement required that SLM deliver to Victory up to four studio albums – an initial studio album and options for three consecutive studio albums – during the term of the 2002 Agreement ("Album Options").

23. The 2002 Agreement gave Victory ownership of sound recording copyrights in all SLM sound recordings created during the term of the 2002 Agreement. It also granted Victory an "irrevocable license under copyright to reproduce each Controlled Composition for uses as contemplated under the [2002] Agreement."

24. The 2002 Agreement also granted Victory perpetual trademark rights in the name and likeness of SLM and its individual members.

25. SLM delivered the following studio albums required under the 2002 Agreement: (1) *Everything Goes Numb* (released by Victory in 2003), (2) *Somewhere in the Between* (released by Victory in 2007) and (3) *The Hands That Thieve* (released by Victory in 2013). *Everything Goes Numb*, *Somewhere in the Between* and *The Hands That Thieve* will hereinafter be referred to as the "SLM Albums."

**The *New Keasbey Nights Album*.**

26. In 2004, Kalnoky decided to re-record *Keasbey Nights* with his new band SLM. In 2006, SLM orally agreed to re-record the identical 14 songs from Catch 22's *Keasbey Nights Album* (the "*New Keasbey Nights Album*"). The decision was prompted by Victory Record's plan to re-release the album with additional content with the then current members of Catch 22.

27. In an interview Kalnoky gave concerning the *New Keasbey Nights Album*, he explained his motivations for re-recording the original *Keasbey Nights Album* as follows: "If there's one thing I can't stand it's when a CD is re-released untouched sonically, with a new cover and maybe a live video, and kids are duped into buying this new edition of something they

already have.  I was upset when I was told the guys [the then-current members of Catch 22] were going to do this for Keasbey, so I offered to re-record it because I've always thought it sounded like pure garbage soundwise.   Plus the budgets we get are laughable, particularly for a band with seven musicians to record.   So we used some of our own money and took our time with this one. I'll tell you right now, we have no intent on hiding our intentions.  We wanted to prevent the re-release of Keasbey untouched as well as get the record to sound how it should have sounded originally.  For that we sacrificed months of our time and our money, and now we feel what we have is worth paying for.  Although, truth be told, I don't care if a single record is sold, as it is indeed old music, and kids have a right to know what it is and to decide whether or not they'll pay for it.  Do I think its worth thirteen dollars?  Yes, very much so, but that's my opinion.  What other people decide, that's their own opinion.  We're going to keep doing what we do whether or not a single record is sold."

28.   The SLM version of the *New Keasbey Nights Album* was originally scheduled for release in late 2004, but due to Kalnoky's incessant production delays and missed deadlines it was not released until March 7, 2006.

29.   Kalnoky, a self-proclaimed perfectionist, once acknowledged in an update to the SLM website his band's penchant for persistently delaying completing production of studio albums: "We are aware of our reputation to take forever to release records and miss our self-imposed deadlines."  Whatever the subjective basis for Kalnoky's proclivity to procrastinate, it had the objective effect of holding albums hostage long after he had received the recording advances from Victory.

**New Keasbey Album Did Not Count as a Qualifying Album under the 2002 Agreement**.

30. SLM and Victory agreed that the *New Keasbey Nights Album* would not count towards or satisfy any of the Album Options in the 2002 Agreement, and that the *New Keasbey Nights Album* would be a stand-alone album separate and distinct fromthe four studio albums required to be delivered to Victory by SLM under the 2002 Agreement.

31. This oral agreement was memorialized in email exchanges between SLM and Victory, including the following email exchange between Kalnoky and Victory's CEO, Anthony Brummel, on October 3 and 5, 2005, when Brummel stated on October 3rd: "Upon your confirmation that "Keasbey" is a special release that does not count as one of your contractual album commitments I confirm that we will: + Wire you $10,000.00 upon receipt of the commercially acceptable master and artwork. + Angela in our office will coordinate your flight tickets for the European tour. + In the spirit of getting everything back on track we can also provide an additional $5000.00 publishing advance from future royalties.

32. On October 5th, Kalnoky replied: "i don't want keasbey to be excluded from our deal, but due to our circumstances, i will accept your deal if you can add on a $10k emergency advance."

33. The oral agreement was fully performed when on December 20, 2005 Victory paid Kalnoky $20,492.74, consisting of an additional $10,000 recording advance (in addition to a $6,000 partial advance previously paid in 2004), as well as an additional $5,000 publishing advance from future royalties and, finally, the sum of $5,492.74 to cover the costs SLM's European tour airplane tickets, in exchange for the *New Keasbey Nights Album*, SLM delivered the *New Keasbey Nights Album* to Victory, and Victory then released SLM's *New Keasbey Nights Album* in 2006.

***99 Songs of Revolution: Vol. 1***

34.    SLM and Victory entered into a separate agreement dated May 21, 2008 (the "2008 Covers Agreement") which obligated SLM to deliver an additional full-length album to Victory consisting entirely of cover songs written by others and was later entitled *99 Songs of Revolution: Vol. 1* (the "Covers Album").

35.    The 2008 Covers Agreement provided, *inter alia*, that the Covers Album would not count towards or satisfy any of the Album Options in the 2002 Agreement, and that the Covers Album would be a separate and distinct Album outside of the 2002 Agreement.

36.    SLM delivered the Covers Album to Victory in 2010, almost two years after signing the 2008 Covers Agreement. It consisted of 11 tracks and it was released by Victory on March 16, 2010.

***You By Me, Vol. 1.***

37.    On or about November 16, 2010, unbeknownst to Victory, performing under his solo pseudonym "Toh Kay," Kalnoky, along with another musician named Dan Potthast (p/k/a "Dan P"), released a "split" album entitled *You By Me, Vol. 1*. Kalnoky recorded and contributed five of the ten sound recordings appearing on that album entitled "I've Set Sail", "Downtown", "I Went In", "Tornado Joe" and "Got Through Another One", featuring Kalnoky's performances of five songs written by Potthast. The other five tracks featured Potthast's performances of five previously released SLM songs. The album was released and distributed by Kalnoky's wholly-owned company, Pentimento Music. Victory never authorized Kalnoky to release those sound recordings, which Victory exclusively owned pursuant to the 2002 Agreement, through Pentimento Music or otherwise.

8

***Streetlight Lullabies***.

38. On or about November 22, 2011, unbeknownst to Victory, performing under his solo pseudonym "Toh Kay," Kalnoky released an album entitled *Streetlight Lullabies*. Kalnoky recorded and contributed all of the following ten sound recordings appearing on that album: "Watch It Crash", "Somewhere In the Between", "Forty Days", "We Will Fall Together", "Dear Sergio", "Would You Be Impressed", "Sick and Sad", "A Moment of Silence", "The Big Sleep" and "A Better Place, a Better Time". The album was released and distributed by Kalnoky's wholly-owned company, Pentimento Music. Victory never authorized Kalnoky to release those 10 sound recordings, which Victory exclusively owned pursuant to the 2002 Agreement, through Pentimento Music or otherwise.

***We Will Fall Together***.

39. On or about November 22, 2011, unbeknownst to Victory, performing under his solo pseudonym "Toh Kay," Kalnoky released a 7" Single record entitled *We Will Fall Together*. Kalnoky recorded and contributed one of the two sound recordings appearing on that Single which had originally appeared on the Toh Kay album *Streetlight Lullabies*. The Single was released and distributed by Kalnoky's wholly-owned company, Pentimento Music. Victory never authorized Kalnoky to release that Single, which Victory exclusively owned pursuant to the 2002 Agreement, through Pentimento Music or otherwise.

***You By Me, Vol. 2***.

40. On or about August 12, 2014, unbeknownst to Victory, performing under his solo pseudonym "Toh Kay," Kalnoky, along with another musician named Marc Smith (p/k/a "Sycamore Smith"), released an EP record entitled *You By Me, Vol. 2*. Kalnoky recorded and

contributed the following three of the six sound recordings appearing on that EP: "Shantantitty Town", "The Man With The Skeleton Arms" and "Hokum All Ye Faithful". The EP was released and distributed by Kalnoky's wholly-owned company, Pentimento Music. Victory never authorized Kalnoky to release those 3 sound recordings, which Victory exclusively owned pursuant to the 2002 Agreement, through Pentimento Music or otherwise.

**_The Hands That Thieve_ (SLM) and _The Hand That Thieves_ (Toh Kay)_.**

41. In or about 2012, SLM delivered the third studio album under the 2002 Agreement entitled _The Hands That Thieve_ (hereafter the "Victory/SLM _The Hands That Thieve_ Album_")_.

42. In or about 2012, performing under his solo pseudonym "Toh Kay," and unbeknownst to Victory, as part of a premeditated plan to sabotage the Victory/SLM _The Hands That Thieve_ Album_,_ Kalnoky recorded an acoustic version of the same musical compositions contained on the Victory/SLM _The Hands That Thieve_ Album, using a deceptively similar album name – "_The Hand That Thieves_" – and using the same artwork and track listing as the Victory/SLM Album (the "Infringing Toh Kay Album").

43. Victory released the Victory/SLM _The Hands That Thieve_ Album on April 30, 2013.

44. On the heels of the release of the Victory/SLM _The Hands That Th_ieve Album, on or about April 30, 2013, Kalnoky released and attempted to sell and/or distribute, or license to others to sell and/or distribute, the Infringing Toh Kay Album directly and/or through various third party retail or distribution outlets, including through Kalnoky's wholly-owned company, Pentimento Music and SLM's affiliated online music store The Risc Store (www.riscstore.com), and Pentimento's distributor and so-called "Label Partner" Redeye Distribution, Inc., as well as

10

through, without limitation, digital service providers such as iTunes, Amazon Music, Google Music, Rhapsody, Spotify, Rdio and Groove.

45. At or about that time, using every available social media outlet available to him, Kalnoky also directed and/or encouraged the public, including SLM fans and Victory customers, to illegally download the Victory/SLM Album *The Hands That Thieve*, and further directed SLM fans and consumers of SLM music to boycott all SLM music and products sold by Victory.

46. Kalnoky's incitement of his fan base to illegally download the Victory/SLM Album *The Hands That Thieve* and boycott the legal purchase of all SLM music could not have been reasonably anticipated by Victory and certainly destroyed the value of the 2002 Agreement to provide Victory with four Victory/SLM albums to Victory for purposes of selling those four albums to that now alienated fan base.

47. Kalnoky's execution of his plan for the total destruction of the value of the 2002 Agreement constituted an anticipatory repudiation thereof, terminating Victory's continued obligations thereunder.

48. Victory sent Kalnoky various written notices objecting to the release of the Infringing Toh Kay Album, contending that such release constituted a material breach of the 2002 Agreement, including the re-recording restriction provisions thereof, and a violation of Victory's rights under the U.S. Copyright Act, as well as other notices objecting to inflammatory and/or defamatory statements published by Kalnoky concerning Victory.

49. SLM, through Kalnoky, thereafter informed Victory that it considers itself no longer bound and obligated under the 2002 Agreement.

11

50.    Up until this time, Victory had fully performed all of its obligations under the 2002 Agreement and remained ready, willing and able to continue to perform its obligations under the 2002 Agreement.

## COUNT I
### (Anticipatory Repudiation)

51.    Victory repeats and realleges the allegations in Paragraphs 1 through 50, as if fully set forth herein.

52.    The 2002 Agreement is a unified agreement requiring the exclusive recording and delivery by Defendant of four Victory/SLM albums to Victory.

53.    In exchange for Defendant's delivery of those four Victory/SLM albums under the 2002 Agreement, Victory was obligated to, among other things, account to and pay Defendant certain royalties.

54.    Defendant delivered three of the four Victory/SLM albums due to Victory under the 2002 Agreement.

55.    Defendants' royalties were accounted to and paid in full as to all albums delivered under the 2002 Agreement as of February 25, 2013 up to the semi-annual royalty period ending December 31, 2012.

56.    At various times prior to February 2013, SLM, through Kalnoky, informed Victory that it no longer considered itself bound and obligated to deliver additional albums under the 2002 Agreement.

57.    However, Victory had maintained then, as it does now, that as of that date, SLM owed Victory two additional studio albums under the 2002 Agreement.

12

58. In early 2013, the impasse was partially rectified when the parties reached a settlement, pursuant to which the Defendant agreed to deliver another studio album of new SLM musical material to Victory.

59. In exchange, in February, 2013 the Defendant was paid a fully recoupable recording advance of $35,000 for that new album pursuant an Amendment to the 2002 Agreement dated February 14, 2013 in connection with the album entitled The Hands That Thieve (the "2013 Amendment").

60. Pursuant to the 2013 Amendment, Defendant delivered the Victory/SLM album *The Hands That Thieve*, which constituted the third album required to be delivered under the 2002 Agreement in partial satisfaction of the four-album recording commitment.

61. In April 2013, Victory released the Victory/SLM album, *The Hands That Thieve*.

62. At or about that time, using every available social media outlet available to him, Kalnoky directed and/or encouraged the public, including SLM fans and Victory customers, to illegally download the Victory/SLM Album *The Hands That Thieve*, and further directed SLM fans and consumers of SLM music to boycott all SLM music and products sold by Victory.

63. Kolnoky's incitement of his fan base to illegally download Victory's music and boycott the legal purchase thereof could not have been reasonably anticipated by Victory.

64. Kalnoky's incitement of his fan base to illegally download the Victory/SLM Album *The Hands That Thieve*, and boycott the legal purchase thereof, destroyed the value of the 2002 Agreement to provide SLM's four Victory/SLM albums to Victory for purposes of selling those four Victory/SLM albums to that now alienated fan base.

13

65. Up until this time, Victory had fully performed all of its obligations under the 2002 Agreement and remained ready, willing and able to continue to perform its obligations under the 2002 Agreement.

66. Kalnoky's execution of his plan for the total destruction of the value of the 2002 Agreement to Victory and his manifestation of a clear and unequivocal intent not to further perform thereunder constituted an anticipatory repudiation thereof, terminating Victory's continued obligations thereunder.

67. Upon Defendant's anticipatory repudiation, Victory was entitled to treat the agreement as having ended and was no longer under any obligation to perform thereunder.

68. As a result thereof, Victory has been damaged in an amount to be determined at trial, but believed to be in excess of $1,000,000.

69. In addition to any damages awarded to Victory for Defendant's anticipatory repudiation of the 2002 Agreement, Victory was no longer obligated to, among other things, account to and pay Defendant any royalties for any of the Victory/SLM albums previously delivered to and released by Victory.

## COUNT II
### (Breach of Contract)

70. Victory repeats and realleges the allegations in paragraphs 1 through 69, as if fully set forth herein.

71. As an alternative claim, should this Court determine that Defendant has not repudiated the 2002 Agreement, then Victory alleges the following.

72. SLM has only delivered three SLM Albums due under the 2002 Agreement.

73. SLM owes one additional studio Album under the 2002 Agreement.

14

74. SLM contends that it has satisfied its delivery obligations under the 2002 Agreement and has expressly refused to deliver the final studio album despite Victory's demand to do so.

75. SLM's conduct is an express repudiation of its album delivery obligations under the 2002 Agreement.

76. SLM's failure to deliver the fourth studio album to Victory constitutes a material breach of the 2002 Agreement.

77. As a result thereof, Victory has been damaged in an amount to be determined at trial, but believed to be in excess of $1,000,000.

78. In addition to the above, paragraph 13 of the 2002 Agreement expressly provides that "in the event of a breach or threatened breach by Artist of any term, condition or covenant hereof [Victory] shall incur immediate irreparable injury. Artist expressly agrees that [Victory] shall be entitled to injunctive and other equitable relief, as permitted by law, to prevent a breach or threatened breach of this agreement by Artist, which relief shall be in addition to any other trights or remedies, for damages or otherwise, available to [Victory]."

79. As a result thereof, in addition to any damages awarded to Victory for Defendant's material breach thereof, Victory is entitled to a permanent injunction, barring Defendant from providing SLM's personal services as a recording artist in connection with the production of records, during the term of the 2002 Agreement.

**COUNT III**
**(Breach of Contract)**

80. Victory repeats and realleges the allegations in Paragraphs 1 through 79, as if fully set forth herein.

15

81.   As an alternative claim, should this Court determine that Defendant has not repudiated the 2002 Agreement, then Victory alleges the following.

82.   Defendant Kalnoky's recording, release, sale and/or distribution of the Infringing Toh Kay Album is a material breach of the re-recording prohibition appearing in paragraph 15(vi) of the 2002 Agreement which specifically provides that SLM "shall not perform any Composition recorded hereunder for anyone other than [Victory] for use in the Territory on Records for a period of five (5) years after the initial date of release of the respective Record containing such selection or (ii) two (2) years after the expiration or other termination of the Term, whichever is later (the "Re-recording restriction")."

83.   In addition, paragraph 5(a) of the 2002 Agreement specifically states that Victory "shall have the exclusive and unlimited right to all results and proceeds of [SLM's] recording services rendered during the Term".

84.   Paragraph 21 of the 2002 Agreement also provides that for the term of the 2002 Agreement, SLM "will perform together as a group" and if any individual member of SLM fails or neglects to do so, that individual nonetheless remains bound by the terms of the 2002 Agreement, including, without limitation, its exclusive recording obligations and assignments of sound recording copyrights and name and likeness rights.

85.   Defendant Kalnoky's recording and release of the sound recordings contained in the albums, *You and Me, Vol. 1*, *Streetlight Lullabies*, the EP, *You and Me, Vol. 2*, and the Single, *We Will Fall Together*, constitute a material breach of the 2002 Agreement under paragraphs 5(a) and 21 as well.

86.   Thus, Defendant Kalnoky's recording of the identical musical compositions contained on the Victory/SLM *The Hands That Thieve* Album, and his release of the Infringing

Toh Kay Album, constitute a material breach of the 2002 Agreement under paragraphs 5(a) and 21 as well.

87. As a result thereof, Victory has been damaged in an amount to be determined at trial, but believed to be in excess of $1,000,000.

88. In addition to the above, paragraph 13 of the 2002 Agreement expressly provides that "in the event of a breach or threatened breach by Artist of any term, condition or covenant hereof [Victory] shall incur immediate irreparable injury. Artist expressly agrees that [Victory] shall be entitled to injunctive and other equitable relief, as permitted by law, to prevent a breach or threatened breach of this agreement by Artist, which relief shall be in addition to any other rights or remedies, for damages or otherwise, available to [Victory]."

89. As a result thereof, in addition to any damages awarded to Victory for Defendant's material breach thereof, Victory is entitled to a permanent injunction, barring Defendant from providing his personal services as a recording artist in connection with the production of records, during the term of the 2002 Agreement and/or re-recording any sound recordings in violation of the re-recording prohibition.

### COUNT IV
### (Copyright Infringement – Toh Kay Album)

90. Victory repeats and realleges the allegations in Paragraphs 1 through 89, as if fully set forth herein.

91. Defendant Kalnoky sold, marketed and/or exploited the Infringing Toh Kay Album through Kalnoky's wholly-owned company, Pentimento Music, and SLM's affiliated online music store The Risc Store (www.riscstore.com), and Pentimento's distributor and so-called "Label Partner" Redeye Distribution, Inc., as well as through digital service providers such as iTunes, Amazon Music, Google Music, Rhapsody, Spotify, Rdio and Groove.

92. The sound recordings contained on the Infringing Toh Kay Album are as follows (the "*Toh Kay* Subject Masters"):

1. The Three Of Us
2. Ungrateful
3. The Littlest Things
4. The Hands That Thieve
5. With Any Sort Of Certainty
6. If Only For Memories
7. They Broke Him Down
8. Toe To Toe
9. Oh Me, Oh My
10. Your Day Will Come

93. Paragraph 5(a) of the 2002 Agreement provides as follows: "[a]ll Masters, Video Masters and other recordings embodying SLM's performances that are made during the Term and made or Delivered hereunder, together with all reproductions derived therefrom and the performances embodied thereon (but excluding musical compositions embodied therein) shall, from the inception of the recording thereof, be the property of [Victory] in perpetuity, free from any claims whatsoever by you or [SLM] or any person deriving rights or interests from or through [SLM]."

94. Paragraph 5(a) further provides that Victory may "obtain copyrights and renewals [ ] in sound recordings…recorded by [SLM] during the term in [Victory's] name as owner and "employer for hire."

95. The Infringing Toh Kay Album was "made" by Kalnoky during the term of the 2002 Agreement.

96. Thus, as an individual member of SLM fully bound by the terms of the 2002 Agreement, the copyrights to Kalnoky's Infringing Toh Kay Album, consisting of the *Toh Kay* Subject Masters, is nonetheless 100% owned by Victory.

97. Defendant Kalnoky's sale or other exploitation of the Infringing Toh Kay Album, either directly and/or through third parties, constitutes an infringement of Victory's sound recording copyrights for the *Toh Kay* Subject Masters contained thereon.

98. Victory duly satisfied the statutory requirements regarding registration and deposit of the *Toh Kay* Subject Masters upon which the alleged infringements are based pursuant to 17 U.S.C. §§ 407 and 411, as well as other statutory formalities required under the Federal Copyright Act.

99. As the sole owner of the copyrights in the *Toh Kay* Subject Masters, Victory has the exclusive rights under the Copyright Act, among other things, to produce, manufacture, transmit and/or distribute Phonorecords embodying them.

100. Kalnoky was without any license or other form or permission, whether express or implied, to copy, duplicate, plagiarize, perform, record, sell, use, transmit or distribute any of the *Toh Kay* Subject Masters as a part of the Toh Kay Album or otherwise.

101. By reproducing, manufacturing, distributing, transmitting and selling copies of the *Toh Kay* Subject Masters without licenses of any kind, Kalnoky has infringed Victory's rights in violation of the Copyright Act.

102. Kalnoky's acts were in knowing and reckless disregard of Victory's rights in and to the *Toh Kay* Subject Masters, and such infringements were willful as that term is defined in the Copyright Act.

103. As a result of Kalnoky's acts of infringement, Victory has sustained actual damages in an amount to be proved at trial.

104. Victory is therefore entitled to an Order awarding Victory actual damages in an amount to be proved at trial.

19

## COUNT V
### (Copyright Infringement – You By Me, Vol. 2 EP)

105. Victory repeats and realleges the allegations in Paragraphs 1 through 104, as if fully set forth herein.

106. Upon information and belief, Defendant Kalnoky sold, marketed and/or exploited the *You By Me, Vol. 2* EP through Kalnoky's wholly-owned company, Pentimento Music, and SLM's affiliated online music store The Risc Store (www.riscstore.com), and Pentimento's distributor and so-called "Label Partner" Redeye Distribution, Inc., as well as through digital service providers such as iTunes, Amazon Music, Google Music, Rhapsody, Spotify, Rdio and Groove.

107. The sound recordings contained on the *You By Me, Vol. 2* EP are as follows (the "*You By Me* Subject Masters"):

1. Shantantitty Town
2. The Man With The Skeleton Arms
3. Hokum All Ye Faithful

108. Paragraph 5(a) of the 2002 Agreement provides as follows: "[a]ll Masters, Video Masters and other recordings embodying SLM's performances that are made during the Term and made or Delivered hereunder, together with all reproductions derived therefrom and the performances embodied thereon (but excluding musical compositions embodied therein) shall, from the inception of the recording thereof, be the property of [Victory] in perpetuity, free from any claims whatsoever by you or [SLM] or any person deriving rights or interests from or through [SLM]."

109. Paragraph 5(a) further provides that Victory may "obtain copyrights and renewals [ ] in sound recordings…recorded by [SLM] during the term in [Victory's] name as owner and 'employer for hire.'"

20

110. The *You By Me* Subject Masters were "made" by Kalnoky during the term of the 2002 Agreement.

111. Thus, as an individual member of SLM fully bound by the terms of the 2002 Agreement, the copyrights to the *You By Me* Subject Masters are nonetheless 100% owned by Victory.

112. Defendant Kalnoky's sale or other exploitation of the infringing *You By Me, Vol. 2* EP, either directly and/or through third parties, constitutes an infringement of Victory's sound recording copyrights in the *You By Me* Subject Masters contained thereon.

113. Victory duly satisfied the statutory requirements regarding registration and deposit of the *You By Me* Subject Masters upon which the alleged infringements are based pursuant to 17 U.S.C. §§ 407 and 411, as well as other statutory formalities required under the Federal Copyright Act.

114. As the sole owner of the copyrights in the *You By Me* Subject Masters, Victory has the exclusive rights under the Copyright Act, among other things, to produce, manufacture, transmit and/or distribute Phonorecords embodying them.

115. Kalnoky was without any license or other form or permission, whether express or implied, to copy, duplicate, plagiarize, perform, record, sell, use, transmit or distribute the *You By Me* Subject Masters as a part of the infringing *You By Me, Vol. 2* EP or otherwise.

116. By reproducing, manufacturing, distributing, transmitting and selling copies of the *You By Me* Subject Masters without licenses of any kind, Kalnoky has infringed Victory's rights in violation of the Copyright Act.

21

117.    Kalnoky's acts were in knowing and reckless disregard of Victory's rights in and to the *You By Me* Subject Masters, and such infringements were willful as that term is defined in the Copyright Act.

118.    As a result of Kalnoky's acts of infringement, Victory has sustained actual damages in an amount to be proved at trial.

119.    Victory is therefore entitled to an Order awarding Victory actual damages in an amount to be proved at trial.

**WHEREFORE**, Victory respectfully prays that the Court find in its favor and enter an order and judgment awarding:

**On Count I:**

Compensatory damages for the anticipatory breach in an amount to be proved at trial, but not less than $1,000,000 and judgment relieving Victory of its obligations to perform under the 2002 Agreement after Defendant's anticipatory repudiation, including, without limitation, any obligation to account to and pay royalties to Defendant after the anticipatory repudiation, whether accrued or earned in the future from the sale of SLM albums.

**On Count II:**

In the alternative, compensatory damages in an amount to be proved at trial, but not less than $1,000,000 and a permanent injunction, barring Defendant from providing his personal services as a recording artist in connection with the production of records, during the term of the 2002 Agreement.

**On Count III:**

In the alternative, Compensatory damages in an amount to be proved at trial, but not less than $1,000,000 and a permanent injunction, barring Defendant from providing SLM's personal

22

services as a recording artist in connection with the production of records, during the term of the 2002 Agreement and/or re-recording any sound recordings in violation of the re-recording prohibition.

**On Counts IV and V:**

Pursuant to §504(b) of the Copyright Act, that Victory recover from Defendant Victory's actual damages, in an amount to be proven at trial, and any profits of the Defendant that are attributable to the infringements alleged and are not taken into account in computing the actual damages or, in the alternative and at Plaintiff's election, statutory damages in the maximum amount allowed by law pursuant to §504(c) of the Copyright Act.

**On All Counts:**

a. The costs of the action, including reasonable attorney's fees as provided by statute including, without limitation, Plaintiff's full costs pursuant to pursuant to §505 of the Copyright Act.

b. Interest on its damages at the legal rate; and

c. Such other and further relief that the Court may deem to be just and proper.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of all issues which are so triable.

Dated: February 27, 2017

MELONI & McCAFFREY
A Professional Corporation
By: /s/Robert S. Meloni
    Robert S. Meloni, *pro hac vice* pending
    Thomas P. McCaffrey, *pro hac vice* pending
3 Columbus Circle – 15th Floor
New York, New York 10019
Tel: (212) 520-6090

23

LEVENFELD PEARLSTEIN, LLC
By: /s/ Christopher M Heintskill (ARDC No. 6272391)
2 North LaSalle, 13th Floor
Chicago, IL 60602
Tel: (312) 346-8380

*Attorneys for Plaintiff Victory Records, Inc.*

24

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 27, 2017, the foregoing document is being served this day on all counsel of record or pro se parties identified below via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Jay S. Bowen, Esq.
Will Parsons, Esq.
SHACKELFORD, BOWEN, ZUMWALT & HAYES, LLC
47 Music Square East
Nashville, Tennessee 37203
Email: wparsons@shackelfordlaw.net

Vangelis Economou, Esq.
IL Bar No. 6185336
ECONOMOU IP LAW
315 South Plymouth Court, Suite 1110
Chicago, IL 60604
Email: Van@EconomouIP.com

Dated: February 27, 2017

By: /s/ Robert S. Meloni